Barry BETHEA, Individually and on behalf of his minor child, Barry Bethea, Jr., Plaintiffs,

v.

David T. MASON, Secretary, Maryland Department of Employment and Social Services, Defendant.

Civ. No. 73-874-H.

United States District Court, D. Maryland.

Nov. 27, 1974.

C. Christopher Brown, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen. of Md., Joel J. Rabin, and Judson P. Garrett, Jr., Asst. Attys. Gen., for defendant.

ALEXANDER HARVEY, II, District Judge:

In Francis v. Davidson, 340 F.Supp. 351 (D.Md.), aff'd 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972) (hereinafter *Francis I*), a three-judge court in this District considered constitutional and other issues relating to the administration of the AFDC–E program by the State of Maryland.[1] The plaintiffs in *Francis I* were fathers who had been discharged from employment for misconduct or who had become unemployed because of a labor dispute. They there brought a class action seeking declaratory and injunctive relief and damages, alleging that benefits under the AFDC–E program had been denied to their chil-

---

1. AFDC–E is the commonly-used label for a program established by Congress in 1961 pursuant to Section 407 of the Social Security Act, 42 U.S.C. § 607, providing aid for the children of fathers who are unemployed. The program, which depends upon a combination of both federal and state funds, is ad-ministered by the various participating states pursuant to regulations of the Department of Health, Education and Welfare. The history of the AFDC–E program is discussed more fully in *Francis I, supra*, at 354, n. 1.

dren by the Maryland Department of Employment and Social Services under its Rule 200.X.A.(2).[2] They alleged that the Rule violated (1) the Equal Protection Clause of the Fourteenth Amendment and (2) 42 U.S.C. § 607 and regulations of the Department of Health, Education and Welfare (hereinafter HEW).

In *Francis I*, Judge Kaufman, writing for a unanimous three-judge panel, found first that the Court had jurisdiction under 28 U.S.C. § 1343(3) because the equal protection claim asserted by the plaintiffs was not frivolous.[3] However, applying the test laid down in Dandridge v. Williams, 397 U.S. 471, 90 S. Ct. 1153, 25 L.Ed.2d 491 (1970), the Court considered the plaintiffs' equal protection contentions on their merits and rejected them. Next, the Court concluded that although it had rejected the constitutional claim, it should "continue to assert its jurisdiction and proceed to resolve the issues herein involving federal statutes and federal regulations." 340 F.Supp. at 360. Finally, ruling on the pendent statutory claim, the Court in *Francis I* held that the State of Maryland could not under Rule 200.X.A.(2) deny AFDC–E benefits to children of fathers who were unemployed because they had been discharged for misconduct or because they had been involved in a labor dispute. The Court found that the Rule was in conflict with HEW regulations establishing mandatory standards of eligibility for benefits.[4]

After the Supreme Court summarily affirmed the *Francis I* opinion, the Secretary of HEW promulgated an amendment to the HEW regulations in question, permitting states to exclude from receiving AFDC–E benefits children of fathers who were unemployed because of participation in a labor dispute or because they were disqualified for unemployment compensation under state law.[5] The amended HEW regulation had the effect of resurrecting Rule 200.X.A.(2) which previously had been invalidated by the *Francis I* decision. Accordingly, the Attorney General of Maryland filed a motion in the *Francis I* case, seeking to dissolve the injunction which the Court had entered. The State contended that Rule 200.X.A.(2), to the extent that it denied benefits to children of fathers who were unemployed because of a misconduct discharge or participation in a labor dispute, was a valid exercise of Maryland's rule-making authority pursuant to the amended HEW regulation.

A further hearing was held, and in another opinion written by Judge Kaufman the Court held that the amended

2. Rule 200.X.A.(2) denies AFDC–E benefits to children of fathers who are "disqualified for unemployment insurance." The Rule provides, in part, as follows: "A grant may not be paid from GPA or AFDC–E: * * * (2) To meet need due to being disqualified for unemployment insurance." Maryland's Unemployment Insurance Law provides that an individual does not qualify for unemployment insurance benefits if he is discharged for "gross misconduct" or if it is determined that "his unemployment is due to a stoppage of work, other than a lockout, which exists because of a labor dispute * * *." Annotated Code of Maryland, Art. 95A, §§ 6(b) and 6(e) (1969 Repl.Vol.).

3. The Court found it unnecessary to determine whether jurisdiction also existed under 28 U.S.C. § 1343(4) or § 1337. 340 F.Supp. at 360, n. 20.

4. Judge Kaufman reasoned as follows: "Thus, HEW used mandatory language, i. e., that the state plan *must* include any father who is employed less than a given number of hours. There is nothing in the regulation which permits a state plan to deny benefits under the state's AFDC–E program, on the ground that the father of the needy child is unemployed because his discharge from employment was due to his own misconduct. Such a father is clearly not employed. Consequently, Maryland Rule 200.X.A.(2), insofar as it attempts to transplant, within the framework of Maryland's AFDC–E program, the disqualification requirements of sections 6(b) and/or (c) of the Maryland Unemployment Compensation law, is violative of HEW's regulation." 340 F.Supp. at 365. Employing like reasoning, the Court further found that the HEW regulations in question required a "similar holding with regard to Maryland's denial of AFDC–E benefits to those out of work because of labor disputes." 340 F.Supp. at 366.

5. See amendment to 45 C.F.R. § 233.100(a)(1), effective July 12, 1973.

HEW regulation was invalid because of a conflict with 42 U.S.C. § 607 and that Rule 200.X.A.(2) was also invalid because it was based on such regulation. Francis v. Davidson, 379 F.Supp. 78 (D. Md.1974) (hereinafter *Francis II*). In denying the motion to dissolve the injunction, the Court in *Francis II* reaffirmed its previous holding that the children of fathers who were discharged from employment because of misconduct or who were unemployed because of a labor dispute were entitled to receive AFDC–E benefits notwithstanding the fact that their fathers were not entitled to unemployment compensation under Maryland law.

The present action was filed August 29, 1973. The plaintiffs in this suit have brought a class action [6] for declaratory and injunctive relief as well as money damages [7] under 42 U.S.C. § 1983, naming as defendant the Secretary of the Maryland Department of Employment and Social Services. In this case, plaintiffs challenge Rule 200.X.A.(2) insofar as it denies benefits to yet another class of children, namely the children of fathers who are not eligible for unemployment compensation under Maryland law because they have voluntarily quit their jobs.[8] As in *Francis I*, plaintiffs here assert both the constitutional claim that the Maryland Rule denies them equal protection of the laws under the Fourteenth Amendment and the statutory claim that the Rule is in conflict with 42 U.S.C. § 607.

In the original complaint, plaintiffs sought the convening of a three-judge court. However, since this action was filed, the Supreme Court has decided Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Under that decision, it is clear (and the parties have so conceded) that a single district judge can decide whether a constitutional claim such as plaintiffs' here is of sufficient substance to support federal jurisdiction. 415 U.S. at 536, 94 S.Ct. 1372. If the single judge finds a constitutional claim such as this one to be insubstantial or frivolous, the case should be dismissed. But if the single judge finds such constitutional claim to be not insubstantial, he may go on to decide the pendent statutory claim without having to convene a three-judge court. 415 U.S. at 543–545, 94 S.Ct. 1372.

Plaintiffs have moved for summary judgment, claiming that there is no genuine issue as to any material fact and that as a matter of law, Maryland Rule 200.X.A.(2) is invalid as it applies to them. Defendant has filed an opposition to such motion and a separate motion to dismiss this action on the ground that this Court lacks jurisdiction because plaintiffs' equal protection claim does not present a "substantial" constitutional question which would support jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and because there is no other basis for federal jurisdiction here.

### I

The first inquiry of the Court in this case is whether there is federal jurisdiction, and determination of this question depends on the sufficiency of plaintiffs' constitutional claim. Rule 200.X.A.(2) can withstand constitutional challenge if there is a rational basis for treating plaintiffs' class differently from others who receive these benefits under Maryland law. Dandridge v. Williams, *supra*. Plaintiffs contend that it is not a rational distinction for Mary-

---

**6.** Defendant has agreed that this case may properly proceed as a class action.

**7.** Plaintiffs concede that they are not entitled to money damages from the individual defendant or from the State of Maryland. It is further conceded by plaintiffs that they are not entitled to AFDC–E benefits retroactively to the date of the filing of this action, should this Court rule in their favor.

See Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974).

**8.** A provision of Maryland's Unemployment Insurance Law which was not before the Court in *Francis I* and *Francis II* disqualifies an individual from unemployment insurance benefits if he is unemployed "due to his leaving work voluntarily without good cause." Annotated Code of Maryland, Art. 95A, § 6(a) (1969 Repl.Vol.).

land to deny them benefits while granting benefits to children of fathers who are eligible for unemployment insurance but have exhausted those benefits, who are temporarily disabled, who are underemployed as defined by federal law, who are ineligible for unemployment compensation because they have been involved in a labor dispute, and who are similarly ineligible because they have been discharged for misconduct. In particular, plaintiffs argue that it is unreasonable for the State to make the payments required by *Francis I* and *Francis II* to those children whose fathers are in the last two categories mentioned above but deny benefits to the children of fathers who are unemployed because they voluntarily quit their jobs.

In reply, defendants contend that plaintiffs have not alleged a sufficiently substantial equal protection claim because a three-judge panel of this Court in *Francis I* previously rejected on the merits a similar challenge to the same Rule. It is further argued that this is a welfare case like Dandridge v. Williams, *supra,* and that the decision of the Supreme Court in that case demonstrates that plaintiffs' constitutional claim here is "obviously without merit."

Pertinent to the question of jurisdiction before the Court is the very recent decision of the Supreme Court in Hagans v. Lavine, *supra.* In that case, recipients of benefits under the AFDC program brought a class action for declaratory and injunctive relief challenging a New York welfare regulation under which the State recouped prior emergency rent payments from subsequent AFDC grants. As here, the plaintiffs asserted a constitutional claim under the equal protection clause and a pendent statutory claim based on an alleged conflict between state and federal law. The Supreme Court, in reversing the Second Circuit, held that plaintiffs had alleged a substantial equal protection claim sufficient to confer jurisdiction under 28 U.S.C. § 1343(3) because no prior controlling decision of the Court had dealt with that or any similar regulation, and because it was not "im-

mediately obvious" from the face of the complaint that the recoupment regulation was so "patently rational as to require no meaningful consideration" by the district court. 415 U.S. at 540–541, 94 S.Ct. at 1381. In *Hagans,* the Supreme Court referred to Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933) as one of the principal decisions on the subject before the Court and quoted from pages 31–32 of that opinion, as follows (415 U.S. at 537, 94 S.Ct. at 1379):

> [i]n the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented; * * The question may be plainly unsubstantial, either because it is "obviously without merit" or because "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy."

In *Hagans,* the Supreme Court further said (415 U.S. at 538–539, 94 S.Ct. at 1380):

> Here, § 1343(3) and § 1983 unquestionably authorized federal courts to entertain suits to redress the deprivation, under color of state law, of constitutional rights. It is also plain that the complaint formally alleged such a deprivation. The District Court's jurisdiction, a matter for threshold determination, turned on whether the question was too insubstantial for consideration.

Applying the *Hagans* rationale to plaintiffs' equal protection claim here, this Court in making the required threshold determination cannot say that this claim is too insubstantial for consideration. Of course, as defendant points out, a three-judge panel of this Court in *Francis I* considered on its merits and rejected an equal protection claim similar to the one here asserted. However, there are significant differences between the constitutional claim asserted in *Francis I* and the one pressed here. In *Francis I*, this Court was

careful to note that the equal protection claim there went to the constitutionality of the application of Rule 200.X.A.(2) to only two classes of unemployed fathers, i. e., strikers and those guilty of misconduct. This Court said (340 F.Supp. at pages 364–365):

> The specific issue which accordingly is presented herein is whether gross misconduct and discharge or suspension as a disciplinary measure, or disqualification because of involvement in a labor dispute, can be made disqualifications in a state's AFDC–E program, without that state violating federal statutory and/or regulatory requirements.

Thus, this Court's decision as to the constitutional issue in *Francis I* was limited to consideration of the rationality of the application of Rule 200.X.A.(2) to strikers and those guilty of misconduct. Plaintiffs' present claim that there is no rational basis for Maryland's denial of benefits to children of fathers who have voluntarily quit work was not before nor considered by this Court in *Francis I.*

Plaintiffs' equal protection claim in this case is in a significantly different posture than the similar claim asserted by plaintiffs in *Francis I*. This Court has now held in *Francis II* that Rule 200.X.A.(2) is invalid because the HEW regulation upon which it is based is also invalid. Children of fathers who are out of work due to misconduct or a labor strike are now entitled to those benefits. Apparently, plaintiffs, who are unemployed because they quit their jobs, are the only group of such fathers whose children do not receive similar benefits. Their equal protection claim here is therefore much stronger now than it

would have been at the time it was considered by this Court in *Francis I*. At that time, there were several different classes which were being denied benefits. Even then, this Court found that the constitutional claim asserted was not frivolous but was sufficient to support federal jurisdiction.

Accordingly, this Court concludes that plaintiffs' equal protection claim is not obviously without merit. It is not immediately obvious to this Court from the face of the complaint that the denial by Rule 200.X.A.(2) of AFDC–E benefits to children of fathers who have voluntarily quit work is so patently rational as to require no meaningful consideration.[9] See Hagans v. Lavine, *supra*, 415 U.S. at 539–541, 94 S.Ct. 1372.

██ This is not to say that plaintiffs will probably prevail on the merits were their constitutional claim to be presented to a three-judge court. Under *Hagans*, the only question before this single district judge is whether the complaint on its face asserts a constitutional claim which is sufficiently substantial to support federal jurisdiction, not whether the plaintiffs will ultimately prevail on the merits. Most of defendant's arguments are addressed to the merits themselves, an issue which is not properly before this single district judge. As the Supreme Court said in *Hagans, supra* (415 U.S. at 542, 543, 94 S.Ct. at 1381, 1382):

> This reasoning with respect to the rationality of the regulation and its propriety under the Equal Protection Clause may ultimately prove correct, but it is not immediately obvious from the decided cases or so "very plain" under the Equal Protection Clause.

9. Defendant has not argued, in the alternative, under Ex parte Poresky, *supra*, that plaintiffs' equal protection claim has been foreclosed because the Supreme Court's summary affirmance of *Francis I* represents a controlling decision on the merits. It is doubtful that a *per curiam* opinion summarily affirming a decision of a three-judge court would amount to a decision of the Supreme Court foreclosing the subject and leaving no room for the inference that the

questions sought to be raised can be the subject of controversy. See Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); Hagans v. Lavine, *supra*, 415 U. S. at 537–538, 94 S.Ct. 1372. In any event, the countervailing argument can be made that the Supreme Court's summary affirmance approved this Court's conclusion in *Francis I* that the constitutional claim was sufficiently substantial to establish federal juris-

\*   \*   \*   \*   \*   \*

Nor can we say that petitioners' claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits." Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666–667 [94 S.Ct. 772, 777, 39 L. Ed.2d 73] (1974).

Nor does Dandridge v. Williams, *supra*, foreclose plaintiffs' constitutional claim here. Defendant contends that the Supreme Court's decision in *Dandridge* establishes a principle of constitutional law which defeats plaintiffs' equal protection claim here. It is asserted that the Court, in recognizing the wide latitude states have in the area of economic regulation and in promoting social welfare, required a high degree of judicial restraint in this area and placed a very substantial burden on plaintiffs who seek to strike down state welfare regulations on equal protection grounds. These arguments were fully answered by the Supreme Court in *Hagans*, when it said (415 U.S. at page 539, 94 S.Ct. at page 1380):

> But *Dandridge* evinced no intention to suspend the operation of the Equal Protection Clause in the field of social welfare law. State laws and regulations must still "be rationally based and free from invidious discrimination." *Id.*, 397 U.S. at 487 [90 S.Ct. at 1162].

Under the facts and circumstances of this case, plaintiffs have asserted a sufficient constitutional challenge to Rule 200.X.A.(2) for purposes of establishing federal jurisdiction. In making the threshold determination whether that challenge is sufficiently substantial, this Court does not address itself to the mer-its. The ultimate effect of *Dandridge* on the merits of the constitutional claim advanced here is not for this single district judge to decide.

### II

Having determined that he has jurisdiction, this single judge may now proceed to adjudicate plaintiffs' pendent statutory claim without convening a three-judge court. Plaintiffs allege that as applied to them, Rule 200.X.A.(2) is in conflict with 42 U.S.C. § 607. A similar question was decided by the Court in *Francis II*, and what this Court must now determine is whether the reasoning adopted by that three-judge court would apply to children of fathers who have voluntarily quit work as well as to children of fathers unemployed because of a labor dispute or because of misconduct.

▪ Defendant contends first that *Francis II* was wrongly decided and should not be followed by another judge of this Court. The undersigned does not agree. The conclusions reached by the unanimous three-judge court in *Francis II* are soundly supported by the reasons set forth in that opinion. Nor should this Court decline to follow *Francis II* merely because that decision has been appealed to the Supreme Court. If the Supreme Court reverses *Francis II,* defendant should of course ask this Court to reconsider the decision rendered in this case.[10]

▪ Defendant next argues that *Francis II* is not controlling here because the facts are different and because a different provision of Maryland's unemployment law is involved. Admittedly, *Francis II* dealt with the application of Rule 200.X.A.(2) to children of fathers who were discharged because of misconduct or who were unemployed because of a labor dispute. But the finding in *Francis II* that the Maryland Rule conflicted with federal law as applied in those two situations, likewise

---

diction. It would certainly be an anomalous result for this Court to now find no federal jurisdiction *because of* the *Francis I* decision when this Court in *Francis I* held that it had jurisdiction over an almost identical claim.

10. Of course, an appeal in this case would present the issues raised herein to the United States Court of Appeals for the Fourth Circuit. Such an appeal would permit the Fourth Circuit to review the soundness of the *Francis II* decision.

is determinative here. Just as "a father who is discharged for cause by his employer *is* unemployed" (379 F.Supp. at 81), so a father who voluntarily quits his job is unemployed within the meaning of 42 U.S.C. § 607(a). The federal statute provides benefits for a needy child who has been deprived of parental support or care by reason of the unemployment of the father. Until Congress amends the statute, "no combination of federal and state regulations may provide that a father who is unemployed is not unemployed." *Francis II, supra* at 81. Because the federal regulation relied upon by defendant is incompatible with the federal statute, the Maryland Rule itself is likewise invalid as applied to the children of fathers who voluntarily quit their jobs.

### III

For these reasons, defendant's motion to dismiss is denied and plaintiffs' motion for summary judgment is granted. As the Court held in *Francis I*, plaintiffs and their class are here entitled only to appropriate prospective relief. Counsel should submit an Order prepared in accordance with the findings and conclusions contained herein.