Clarence W. **BLOUNT** et al.

v.

Marvin **MANDEL**, Governor of the State of Maryland, et al.

Civ. No. Y–75–207.

United States District Court,
D. Maryland.

Aug. 13, 1975.

Walter S. Levin, James R. Whattam, Baltimore, Md., for plaintiffs.

Henry R. Lord, George A. Nilson, Gerald Langbaum, Baltimore, Md., for defendants.

JOSEPH H. YOUNG, District Judge.

Plaintiffs in this action are two registered Maryland voters and six members of the Maryland General Assembly who hold full time positions with local Boards of Education.[1] Defendants are Governor Marvin Mandel, Attorney General Francis Burch, Comptroller of the Treasury Louis Goldstein and State Treasurer William S. James.

On November 3, 1970, the voters of the State of Maryland ratified an amendment to the Maryland Constitution which created the General Assembly Compensation Commission. *See* Ch. 576, [1970] Md.Laws 1671, *codified as* Md. Const. art. III, § 15(2) and (3). This commission was charged with establishing the compensation of members of the Maryland General Assembly. The nine-member commission issued its first report on January 28, 1971. The report set the annual salary for all members of the General Assembly, except the President of the Senate and the Speaker of the House, at $11,000. In a footnote to its report, however, the Commission noted:

> It has come to the attention of the Commission that a small number of Legislators hold salaried positions with the State of Maryland or with political subdivisions of the State, presumably receiving a leave of absence from such employment during the legislative session. The Commission believes that such practice should be discontinued and urges the General Assembly to give consideration to this recommendation, particularly in light of the increased compensation recommended in the resolution.

*The Report of the General Assembly Compensation Commission Accompanying the Resolution of that Commission Determining the Compensation and Al-*

---

1. Plaintiffs Blount and Dean are full-time professors with the Community College of Baltimore. Plaintiffs Howell, Kach, Robey and Weisengoff are employed in the Baltimore City school system. Plaintiffs Wheatley and Pollock are residents of Maryland qualified to vote in general and primary elections.

*lowances of Members of the General Assembly,* Part VI (Recommendations), § A, at 2625 (Jan. 28, 1971).

The General Assembly took no action on the recommendation.[2] On January 24, 1974, the Commission issued its second report which took effect with the force of law on January 8, 1975. The Commission noted with disapproval the trend toward increased political activity by public employees and determined to take steps "to prevent or discourage dual governmental service." The Commission found such dual employment to be undesirable:

> [I]t was the unanimous view of those witnesses questioned on the subject that dual public employment was fraught with political conflict of interest and other problems and that a different basis [of compensation] would be proper. Considerable question was raised as to whether an individual's legislative effectiveness, not to mention the public's confidence in government, might not be seriously compromised by that individual's being subject to the competing and often inconsistent demands on both his time and loyalty from two different branches or levels of government and also by public criticism of the same individual receiving two public pay checks covering the same years.

*The Report of the General Assembly Compensation Commission Accompanying the Resolution of that Commission Determining the Compensation and Allowances of Members of the General Assembly,* Part VII (Recommendations), § B, at 18 (Jan. 24, 1974) [hereinafter cited as Compensation Commission Report II].

The Commission also pointed to Article 8 of the Maryland Declaration of Rights, which provides:

That the Legislative, Executive and Judicial Powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.

The Commission noted that although Article 8 has not been construed by the Maryland courts to prohibit public employees of the State from serving as legislators, an Attorney General opinion issued in 1972 expressed considerable doubt as to whether a state legislator was precluded from participating in other state employment. 56 Op.Att'y Gen. 266, 273 (1972). While the Commission concluded that it did not have the power to preclude members of the General Assembly from serving as legislators while also serving as public employees, it found that it did have the power to discourage dual employment indirectly by establishing a different and disadvantageous formula for compensation for members of the General Assembly who were also public employees of the State. Compensation Commission Report II, *supra* at 17.

That new formula was reflected in Item 1(a) of the January 24, 1974, resolution of the Compensation Commission:

*Item 1.*

(a) Each member of the General Assembly, except the President of the Senate and the Speaker of the House of Delegates, shall receive an annual salary of Twelve Thousand Five Hundred Dollars ($12,500), accounting from January 8, 1975, and payable monthly; *provided,* however, that the salary of each member of the General Assembly who, at any time during the period of a regular session held during his term of office, is employed on

---

2. Senate Bill 188 and House Bill 97, introduced in the 1973 session of the Legislature, and Senate Bills 227, 244, and 245, introduced during the 1974 legislature, would have prevented members of the General Assembly from holding other state employment, with certain exceptions. None of the bills was enacted. With the contrary effect, the General Assembly enacted a new Article 33, §§ 28–1 and 28–2, which broadened the scope of permissible political activity by public employees.

a full-time basis, and compensated for such employment, by the State or any county or incorporated municipality or other political subdivision within the State or any agency of any of the aforegoing or any agency or commission or similar governmental body established by State or local law, shall, during the calendar year in which such regular session is held, be the sum of (i) Three Thousand Five Hundred Dollars ($3,500), plus (ii) the net amount, not to exceed Nine Thousand Dollars ($9,000), by which the compensation received from such other employment is reduced during such calendar year by reason of leaves of absence taken from such other employment for the purpose of fulfilling his duties as a member of the General Assembly. For purposes of the foregoing, the taking of such leaves of absence from such other employment shall not be considered in determining whether such other employment is full-time or determining whether the employment relationship exists and the employee is compensated for such employment at any time during the period of a regular session.

Compensation Commission Report II, *supra* at R–1 to R–2. This formula provides for a total legislative salary for the plaintiffs of $3,500 plus an amount equal to any compensation lost with respect to other employment by reason of performance of legislative duties. *See* Compensation Commission Report II, *supra* at 20.

The plaintiffs instituted this action shortly after the Commission's resolutions took effect. The complaint seeks declaratory and injunctive relief and requests the convening of a three-judge court. Plaintiffs rest jurisdiction on 28 U.S.C. §§ 1331 and 1343, and claim that on its face, and as applied to the plaintiffs, Item 1(a) of the Commission's resolutions has a chilling effect on the fundamental freedoms of seeking and holding political office, speech, political association and the right to petition the government for a redress of grievances, in violation of due process and equal protection of the laws as protected by the First, Fifth and Fourteenth Amendments. The defendants have responded, challenging the Court's jurisdiction over the subject matter of the controversy and opposing the convocation of a three-judge court.

▪ Because the Court concludes that abstention is proper and that a single judge may abstain without referring the matter to a three-judge court, the only questions which must be answered before abstention are those which go to the subject matter jurisdiction of the Court. The defendants have raised two such defenses: first, that the case does not present a justiciable controversy because it involves a "political question"; and second, that a substantial constitutional question does not exist under 42 U.S.C. § 1983.[3]

## JUSTICIABILITY OF THE CAUSE OF ACTION

▪ Although the federal courts do not shrink from deciding political cases, they will not adjudicate what have come to be known as "political questions." *Powell v. McCormack*, 395 U.S. 486, 518, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

The defendants maintain that since the authority to establish legislative compensation is vested solely in the Maryland legislature, the federal judiciary may not review that essentially "political" decision. Plaintiffs have replied that the Maryland Compensation Commission is independent of all branches of government, and its decisions are therefore reviewable.

---

3. The question of the plaintiff voters' standing to sue need not be decided because the plaintiff legislators clearly do have standing to sue, *Cf. Board of Educ. v. Allen*, 392 U.S. 236, 241 n. 5, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968); *Coleman v. Miller*, 307 U.S. 433, 437–46, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), thus the Court has not been deprived of subject matter jurisdiction through lack of adversary litigants. The appropriate time to decide this question is when, if ever, the case is brought back to the federal courts after resolution of the litigation in the state courts.

Both parties have mistaken the fundamental nature of the "political question" doctrine. Its purpose is to maintain the separation of powers mandated by the Federal Constitution between the three branches of the Federal Government. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 170, 2 L.Ed. 60 (1803). Thus, in "political question" cases, the courts have been concerned with whether there has been a "textually demonstrable constitutional commitment of the issue [presented to the federal judiciary] to a coordinate political department" of the Federal Government. *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962). The federal judiciary will therefore abstain from taking jurisdiction when the issue presented to the court would be more correctly entrusted to another branch of government.[4]

■■ However, as stated in *Baker v. Carr*, *supra* 369 U.S. at 210, 82 S.Ct. at 706, "in the other 'political question' cases, it is the relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States, which gives rise to the 'political question.'" *See*, 13 *C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure*, Civil § 3534, at 304 n. 37 and accompanying text (1975). The political question doctrine has nothing whatever to do with the power of the federal judiciary to review the actions of a state

legislature or any other branch of state government. Although many political question cases have involved decisions made by state governments, *e. g., Baker v. Carr*, *supra*, the "political question" derives not from the fact that a state action gave rise to the controversy, but from the presentation of the controversy, whatever its origin, to the wrong branch of the Federal Government.[5] Actions of state governments in violation of the Federal Constitution are traditionally reviewable by the federal courts. *Baker v. Carr*, *supra* 369 U.S. at 229, 82 S.Ct. 691.[6]

■ The political question doctrine is therefore no bar to the justiciability of this case.

## SUBSTANTIALITY OF THE FEDERAL CONSTITUTIONAL QUESTION

■ Where a request for a three-judge court has been made, a single judge must establish whether a substantial constitutional question exists in order to give the court subject matter jurisdiction over the action before abstention is ordered.

■ According to *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the initial question before the single district judge is whether the complaint on its face asserts a constitutional claim which is sufficiently substantial to support federal jurisdiction, not whether the plaintiffs will ultimate-

4. *See, e. g., Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (exclusion of Congressperson from House of Representatives on basis of qualifications not stated in Constitution subject to judicial review); *Clark v. Allen*, 331 U.S. 503, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947) (validity of treaty not within judicial function); *Coleman v. Miller*, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939) (validity of constitutional amendments matter for congressional determination); *In re Baiz*, 135 U.S. 403, 10 S.Ct. 854, 34 L.Ed. 222 (1890) (diplomatic status of foreign persons is executive decision); *Luther v. Borden*, 48 U.S. (7 How.) 1, 12 L.Ed. 581 (1849) (Congress has sole power to enforce Guaranty Clause); *see generally* cases cited at 13 C. Wright, A.

Miller & E. Cooper, Federal Practice and Procedure, Civil § 3534, at 298–318 (1975).

5. In *Bond v. Floyd*, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966), for instance, a state legislature barred an elected representative from taking his seat and he challenged the legislature's action as being in violation of his First Amendment rights. The "political question" doctrine never surfaced, and properly so—the case had been presented to the appropriate federal forum, the judiciary.

6. The Maryland courts have always recognized that the actions of the state legislature are restricted by the Constitution. *First Continental Sav. & Loan Ass'n, Inc. v. Director*, 229 Md. 293, 183 A.2d 347 (1962); *Crane v. Meginnis*, 1 Gill. & J. 463 (Md. 1829).

ly prevail on the merits. *Id.* at 541–43, 94 S.Ct. 1372; *Bethea v. Mason,* 384 F. Supp. 1274, 1279 (D.Md.1974).

■ *Hagans* reveals that the threshold standard for subject matter jurisdiction is a very low one. A complaint may be dismissed if it is

"so attenuated and unsubstantial as to be absolutely devoid of merit," *Newburyport Water Co. v. Newburyport,* 193 U.S. 561, 579, 24 S.Ct. 553, 557, 48 L.Ed. 795 (1904); "wholly insubstantial," *Bailey v. Patterson,* 369 U.S. 31, 33, 82 S.Ct. 549, 550–551, 7 L.Ed.2d 512 (1962); "obviously frivolous," *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910); "plainly insubstantial," *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062 (1933); or "no longer open to discussion," *McGilvra v. Ross,* 215 U.S. 70, 80, 30 S.Ct. 27, 31, 54 L.Ed. 95 (1909).

415 U.S. at 536–37, 44 S.Ct. at 1379. *Ex Parte Poresky,* 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933), synthesized the law in this area, stating:

In the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented. \* \* \* The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. The question may be plainly unsubstantial, either because it is "obviously without merit" or because "its soundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy."

*Id.* at 31–32, 54 S.Ct. at 4 (citations omitted).

■ The test of subject matter jurisdiction under 42 U.S.C. § 1983 is two fold. First, the complaint must allege facts which show that the acts of the defendants deprived the plaintiffs of rights guaranteed under the Constitu-

tion, and second, the complaint must show that the acts of the defendants were done under color of state law. *See Sykes v. State of California,* 497 F.2d 197 (9th Cir. 1974). The plaintiffs have done so. Each defendant is an officer of the State of Maryland, and all acts of the defendants listed in the complaint were done in the course of their official duties. In addition, the plaintiffs have stated a colorable claim for deprivation of constitutional rights by one or more of the defendants. Without intimating any opinion as to the ultimate resolution of the case, it is obvious that the plaintiffs are being treated unequally and that this unequal treatment places them at a disadvantage to others who are in private employment who wish to seek and hold public office.

The majority of the defendants' arguments go to the merits of the case, which a single district judge in a case such as this may not reach. *Bethea v. Mason,* 384 F.Supp. 1274, 1279 (D.Md. 1974). What is important under the *Hagans* test is that first, the plaintiff's complaint has facially satisfied the requirements of 42 U.S.C. § 1983, second, that their claims are not frivolous, insubstantial or devoid of merit, and third, that the defendants have cited no Supreme Court case which forecloses the constitutional question at issue here.

The plaintiffs have therefore passed the threshold test of subject-matter jurisdiction.

## DECISION ON ABSTENTION BY A SINGLE JUDGE

The first question which must be addressed is whether a single judge may decide to abstain in a case which ultimately presents issues appropriately referred to a three-judge court. The case of *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962), is directly on point. There, a single district judge denied a request for a three-judge court and abstained on the merits of the case in order to give the state courts an opportunity to pass on questions of state law.

The Supreme Court overruled the single judge's determination to abstain, holding that once a request for a three-judge court is addressed to a district judge, the inquiry of the single judge is limited to whether the case is within the subject matter jurisdiction of the court and the requirements of the three-judge court statute. The determination to abstain by the single judge under this rule was an improper invasion of the province of the three-judge panel.

It must be noted that although *Idlewild* has never been expressly overruled by the Supreme Court, careful consideration of recent three-judge court cases compels the conclusion that these cases not only invite, but require a reconsideration of *Idlewild* with some history of the three-judge court statute as background.

In *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1909), the Supreme Court upheld the power of a federal court to enjoin a state official from enforcing a state statute. This provoked congressional reaction which eventually resulted in the enactment of the predecessor of the present three-judge-court statute. *See* Act of March 3, 1911, ch. 231, § 266, 36 Stat. 1162. Congress established the three-judge court for a single reason: "to save state and federal statutes from improvident doom, on constitutional grounds, at the hands of a single federal district judge." *Gonzalez v. Automatic Employees Credit Union*, 419 U.S. 90, 97, 95 S.Ct. 289, 294, 42 L.Ed.2d 249 (1974).

 The statute itself applies only in narrow circumstances: injunctive relief must be sought, *see Mitchell v. Donovan*, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970) (request for declaratory relief insufficient to warrant convocation of three-judge court); a state officer must be the party sought to be enjoined, *see Moody v. Flowers*, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643

(1966); the basis of the challenge to the state statute must be constitutional, not statutory, *see Swift & Co. v. Wickham*, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

 Gradually additional limitations were grafted onto the statute: the law challenged must be one of statewide applicability, *Board of Regents v. New Left Educ. Proj.*, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972). Although a single district judge could not dismiss such a case on its merits, he could pass on the initial question of subject matter jurisdiction, which was to be measured by the allegations of the complaint; *Ex Parte Poresky*, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). The district judge was warranted, therefore, in dismissing a case when its constitutional challenge was "obviously without merit." *Id.* at 32, 54 S.Ct. 3. In *Bailey v. Patterson*, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), the Court found that the constitutional question raised by the complaint suffered not from being insubstantial but from being too substantial: Petitioners sought to enjoin state statutes which required segregation in transportation facilities. The Supreme Court held that the statutes were so patently unconstitutional that the claim that they were not would be frivolous. Since no constitutional controversy was therefore presented, a single district judge could therefore decide the merits of the case.[7]

The Supreme Court entered a new and even more restrictive era of three-judge-court law when it began to consider the division of power between a three-judge court and a single judge when non-constitutional grounds of resolution accompanied a constitutional challenge to a state statute.

In *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the primary question decided by the Court was that mootness of a constitutional claim did not deprive the district court

---

7. As to the history of the three-judge court proceeding discussed above, *see* Note, *Federal Courts—Three Judges or One? A Problem*

*of Overlapping Power in the District Courts*, 34 Md.L.Rev. 634, 637–39 (1974).

of jurisdiction over a pendant statutory claim and that a single judge was warranted in reaching the merits of the statutory claim after remand from the determination of mootness by the three-judge court. Nevertheless, in dictum the Court noted that even before the determination of mootness had been made, "the most appropriate course may well have been to remand to the single district judge for findings and the determination of the statutory claim rather than encumber the district court, at a time when district court calendars are overburdened, by consuming the time of three federal judges in a matter that was not required to be determined by a three-judge court." *Id.* at 403, 90 S.Ct. at 1213.

Fortified by this dictum, one case in this district concluded that if a three-judge panel could remand a non-constitutional claim to a single judge there was no reason that a single judge could not decide the non-constitutional claim before sending the case to a three-judge panel, thus presumably avoiding completely the need to certify a three-judge court. *See Norton v. Richardson,* 352 F.Supp. 596 (D.Md.1972), *vac'd on other grounds,* 418 U.S. 902, 94 S.Ct. 3191, 41 L.Ed.2d 1150 (1974).

*Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), approved the *Norton*-type procedure by which a single district judge took jurisdiction over a pendant statutory claim and granted requested relief before referral to a full panel. The Court approved this procedure as a reflection of the "evolution of three-judge court jurisprudence, 'this Court's concern for efficient operation of the lower federal courts' and 'the constrictive view of the three-judge [court] jurisdiction which this Court has traditionally taken.'" *Id.* at 544, 94 S.Ct. at 1382 (citations omitted). It labelled the alternative procedure of convening a three-judge court and having it remand the case to a single judge for a decision on the non-constitutional grounds as "grossly inefficient." *Id.*[8]

Two other Supreme Court cases complete the three-judge court picture. They do not deal with the division of power between a three-judge panel and a single district judge, but with the proper forum for appeal from a decision of a three-judge court. In *Gonzalez v. Automatic Employees Credit Union,* 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974), the plaintiff presented a constitutional challenge to a state motor vehicle repossession statute. The single judge held that the plaintiff did not have standing to sue and dismissed the case. The plaintiff took an immediate appeal to the Supreme Court. That Court, in turn, held that appeal from dismissal of the case on the basis of lack of standing was properly to the Court of Appeals and did not come within the ambit of 28 U.S.C. § 1253 which provides for direct review to the Supreme Court from an order of a three-judge court denying relief.

---

8. In a case decided just before *Hagans, Doe v. Lukhard,* 493 F.2d 54 (4th Cir. 1974), the Fourth Circuit stated that the better practice in a case where a non-constitutional ground was available would be to designate a three-judge court and give it the option of passing upon both the constitutional and non-constitutional claims or remanding the non-constitutional claims to a single judge. The judgment in that case was recently vacated on the merits by the Supreme Court, and remanded to the Court of Appeals, 420 U.S. 999, 95 S.Ct. 1441, 43 L.Ed.2d 758 (1975) (in light of *Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975).

District court decisions after *Lukhard* have ignored its suggestions, *see, e. g., Bethea v.*

*Mason,* 384 F.Supp. 1274 (D.Md.1974), and in any case, *Hagans* can probably be considered to have disapproved of the procedure which *Lukhard* advocates.

A Third Circuit interpretation of *Hagans,* holding that if a single judge would not grant relief on the non-constitutional claim, that issue should be presented anew to a three-judge court which could then pass on both issues, has been severely criticized. *Murrow v. Clifford,* 502 F.2d 1066 (3d Cir. 1974). *See,* Note, *Federal Courts—Three Judges or One? A Problem of Overlapping Power in the District Courts,* 34 Md.L.Rev. 634 (1973).

The recent case of *MTM, Inc. v. Baxley,* 420 U.S. 799, 95 S.Ct. 1278, 43 L. Ed.2d 636 (1975) (per curiam), confirmed this holding with regard to appeals. There a three-judge court dismissed a case seeking an injunction against pending state prosecution under an Alabama nuisance law on the basis of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Supreme Court held that appeal from this decision lay to the Court of Appeals. The Court held that "a direct appeal will lie to this Court under § 1253 from the order of a three-judge federal court denying interlocutory or permanent injunctive relief only where such order rests upon resolution of the merits of the constitutional claim presented below." *Id.* 420 U.S. at 804, 95 S.Ct. at 1281.

According to the concurring opinion by Justice White, and the dissenting opinion by Justice Douglas, *MTM* raises as many questions as it puts to rest because it fails to resolve an essential asymmetry which exists in three-judge-court law.

At present some non-constitutional claims such as abstention must be heard by three judges, while others, such as standing or independent statutory claims, may be heard by a single judge. The Supreme Court was faced in *MTM* with a situation where a three-judge court decided a non-constitutional claim. The basis for its interpretation of section 1253 prohibiting appeal from a decision of a three-judge court on a non-constitutional claim was that this provided a kind of "symmetry" and was, in addition, consistent with the Supreme

Court's effort to restrict the number of cases on its docket.

According to Justice White, the more logical and far more "symmetrical" formula for limiting Supreme Court review of a three-judge panel decision would be to decide that all non-constitutional claims must be heard by a single judge with direct appeal to the Court of Appeals, and all constitutional claims must be heard by a three-judge court with direct appeal to the Supreme Court. *See* 43 U.S.L.W. at 4444 (White, J., concurring). This formula would, of course, require the overruling of *Idlewild.*[9]

There are any number of reasons to adopt this interpretation of three-judge-court jurisdiction. First, this formula is the one most compatible with section 1253. If three-judge courts *only* hear constitutional claims, then all appeals from such courts would go to the Supreme Court, and the *MTM* situation would not arise.[10]

Second, this division of decision-making authority between single judges and three-judge panels would save a great deal of judicial time in the lower federal courts. It is a deplorable and unnecessary waste of time for three judges to take jurisdiction over a case, only to remand to a single judge a *Younger v. Harris* problem or a pendant statutory claim (*Hagans* has already addressed this problem). It is equally inefficient, under *Idlewild,* to convene a three-judge court which then immediately abstains from deciding the constitutional issues in order to allow the state courts the opportunity to pass on unsettled questions of state law.

9. Justice White addressed the question of *Idlewild* specifically:

[Even in *Idlewild*] if it appears on the face of the complaint that there is no ground for equitable relief, there would be no necessity for convening a three-judge court. . . . The plain import of these cases is that three judges are not required merely because a complaint states a cause of action for an injunction based on a constitutional challenge to a state statute. All non-three-judge-court issues may be sorted out and tried by a single judge. Cases like *Idlewild* are derelicts and should be expressly cleared from the scene.

10. *Gonzalez* also noted that a direct appeal did not lie from a decision to abstain. *Id.* 419 U.S. at 99, 95 S.Ct. 289. *See also Webster v. Perry,* 367 F.Supp. 666 (M.D.N.C. 1973), *vac'd* 417 U.S. 963, 94 S.Ct. 3166, 41 L.Ed. 1136 (1974), and *B. T. Investment Mgrs., Inc. v. Dickerson,* 379 F.Supp. 792 (N.D.Fla.1974), *vac'd* 421 U.S. 901, 95 S.Ct. 1548, 43 L.Ed.2d 769 (1975), where appeals to the Supreme Court from decisions of three-judge panels to abstain resulted in vacating of the judgments so that fresh appeals could be taken to the Circuit Court of Appeals.

In short, if constitutional questions are avoided, as they must be, *see Siler v. Louisville & Nashville R. Co.,* 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909), there is simply no need or justification to convene a three-judge court. In fact abstention, like a dismissal on the merits on the basis of *Younger v. Harris,* provides the least possible justification for a three-judge court because in either case, far from intervening to prevent the operation of state law, a federal court is deferring to the state courts.

The one judge/three judge court dichotomy proposed by Justice White, therefore, serves the original purpose of the three-judge-court statute—protecting state statutes from invalidation at the hands of a single federal judge on constitutional grounds—while still protecting the interest of judicial economy and the avoidance of constitutional adjudication.

Finally, referral of all non-constitutional claims to a single judge, with the use of the three-judge panel only after the single judge determines that constitutional adjudication cannot be avoided, and the consequential reduction of three-judge-court jurisdiction, seems to be a logical extrapolation of the cases which the Supreme Court has decided in recent years. Not only has the Supreme Court attempted to limit its own docket of three-judge-court cases (*MTM, supra, Gonzalez, supra*), but it has attempted to alleviate the · burden of three-judge courts on the lower federal courts by enlarging the power of the single federal judge (*Hagans, supra, Rosado, supra, Poresky, supra, Bailey, supra*). In view of the simple, logical and expedient formula for interpreting an "awkwardly drafted" statute, *see Gonzalez v. Automatic Employees Credit Union,* 419 U.S. 90, 95, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974), *Idlewild* does indeed appear to be a "derelict," and should be discarded.

Absent the Supreme Court's avowed willingness to re-examine the area of three-judge-court jurisprudence, this

Court would be reluctant to act in contravention of *Idlewild.* In *Gonzalez,* however, the Court stated:

> [I]n the area of statutory three-judge court law the doctrine of *stare decisis* has historically been accorded considerably less than its usual weight. These procedural statutes are very awkwardly drafted, and in struggling to make workable sense of them, the Court has not infrequently been induced to retrace its steps. Writing for the Court on one of these occasions, Mr. Justice Harlan noted: "Unless inexorably commanded by statute, a procedural principle of this importance should not be kept on the books in the name of *stare decisis* once it is proved to be unworkable in practice; the mischievous consequences to litigants and courts alike from the perpetuation of an unworkable rule are too great."

419 U.S. at 95–96, 95 S.Ct. at 293.

■ This review of the recent decisions of the Supreme Court points inevitably to a three-judge-court jurisprudence in which *Idlewild* has no part and merits a consideration of the question of abstention without recourse to a three-judge panel.[11]

## ABSTENTION

■ This case is an appropriate one for abstention under the doctrine of *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Aside from being the landmark case in the area, *Pullman* is also the prototype for abstention. A Commission order which had the force of law was challenged on the grounds that it was repugnant to the Constitution. The order was also challenged as outside the scope of the Commission's authority. The Supreme Court held that abstention was proper because interpretation of the state law by the state courts could be dispositive of the case. The Court felt that the appropriate forum for resolu-

---

11. In light of the fact that abstention will be ordered, the decision on whether to convene a three-judge court will be deferred until the case returns to this Court.

tion of complicated and unsettled questions of state law was the state court; otherwise, "a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication." *Id.* at 500, 61 S.Ct. at 645. Abstention therefore serves two purposes in a *Pullman*-type case. It prevents needless friction with the state courts and avoids premature constitutional adjudication. *See Kusper v. Pontikes,* 414 U.S. 51, 54–55, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973).[12]

Generally, in *Pullman*-type cases abstention is required:

> where resolution of the federal constitutional questions is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law . . . in order to avoid unnecessary friction in federal-state functions, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication.

*Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965). Abstention is ordered in the rare case where the state court's interpretation of the state statute or its evaluation under the state's constitution may obviate the need to consider its validity under the Federal Constitution. *See Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 83, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *Reetz v. Bozanich,* 397 U.S. 82, 86–87, 90 S.Ct. 788, 25 L. Ed.2d 68 (1970); *City of Meridian v. Southern Bell Tel. & Tel. Co.,* 358 U.S.

639, 640–41, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959).

The plaintiffs argue that Item 1(a) of the Commission's resolution which provides for unequal pay to legislators who are also public employees is unconstitutional on several grounds under the Federal Constitution, that the statute is clear and unambiguous on its face, and that Article 8 of the Maryland Declaration of Rights has no bearing on this case. The defendants reply that the crux of this case is indeed Article 8 of the Declaration of Rights which provides for the separation of powers between the several branches of state government.

The defendants have asserted Article 8 and then left its ramifications unarticulated. In fact, both parties have eschewed Article 8's inevitable implications for obvious reasons. In essence, the plaintiffs have opened the proverbial Pandora's box. They challenge the Commission's resolution as invalid under the Federal Constitution. Nevertheless, once they open up this line of attack based on equal compensation, they leave themselves open to the defendants' attack on the statute under Article 8 of the Declaration of Rights which would invalidate the Resolution insofar as it compensates the plaintiffs *at all.*

Normally the plaintiff will challenge a state statute on all possible grounds of invalidity; it is certainly unusual for a plaintiff to assert the federal constitutional barrier to enforcement of a statute, and then to have the defendant in effect agree that the statute is invalid

---

12. Much of the discussion in the briefs of the parties fails to recognize the subtleties of the law of abstention. The case of *Meredith v. City of Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), is irrelevant here. It deals only with the question of abstention in cases based on diversity jurisdiction. It stands for the principle that except in rare cases, *see, e. g., Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), a federal court will not decline to take jurisdiction in diversity cases simply

because questions of state law are complicated or unsettled.

The cases of *Great Lakes Dredge & Dock Co. v. Hoffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), and *Martin v. Creasy,* 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959), are also inapposite here. They concern abstention when decision by a federal court would involve intervention of the federal courts into the internal administration and economy of the states, especially when forums for redress are provided by the states for aggrieved parties.

by raising distinct questions of state law which also cast doubt on the statute's validity. Nevertheless, the fact that the structure of this lawsuit is unique does not alter the underlying necessity for abstention. In spite of the fact that the case presents a new "twist" in the consideration of constitutional issues, it warrants abstention because the constitutional questions are "entangled in a skein of state law that must be untangled before the federal case can proceed," McNeese v. Bd. of Educ., 313 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963). In effect, the application of Article 8 to the Commission's Resolution which would render the plaintiffs ineligible to receive compensation as legislators might obviate the need to reach the federal constitutional question.

Were the issues of state law clear, the Court would apply them without hesitation. The issues of state law here, however, have never been construed in Maryland, and it is this fact which ultimately provides the justification for Pullman-type abstention. Article 8 of the Declaration of Rights has never been construed in a case of this kind by the Maryland courts. But, cf., State Tax Comm'n v. Harrington, 126 Md. 157, 94 A. 537 (1915) (legislators could serve as general counsel of state agency under Article III, § 7 of Maryland Constitution; Article 8 of Declaration of Rights not construed). As noted above, an opinion of the Attorney General of the State of Maryland expresses grave reservations as to the constitutional permissibility of dual employment such as that in question here. 56 Op.Att'y Gen. 266 (1972). That opinion cites cases in other states with similar constitutional provisions regarding dual employment. Three such cases do not allow dual employment,[13] while one case held dual employment permissible.[14]

With the state of the law uncertain, if not nonexistent, and a ruling on these state questions possibly dispositive of the case, this Court has no choice but to abstain under Pullman.

■ Abstention is normally regarded as a postponement of federal jurisdiction rather than an abdication of its exercise, Harrison v. NAACP, 360 U.S. 167, 175, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959), and the Supreme Court has noted on numerous occasions that the district court should retain jurisdiction rather than dismiss the case while the parties seek a ruling in the state courts on the questions of state law. See Trial Lawyers Ass'n v. New Jersey Sup. Ct., 409 U.S. 467, 469, 93 S.Ct. 627, 34 L. Ed.2d 651 (1973) (dismissal nevertheless allowed); Zwickler v. Koota, 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967); Doud v. Hodge, 350 U.S. 485, 76 S.Ct. 491, 100 L.Ed. 577 (1956).

The Court will therefore retain jurisdiction over the case provided the parties take their case to the state courts within a reasonable time.

In light of the foregoing, it is this 13th day of August, 1975, by the United States District Court for the District of Maryland, Ordered:

1. That the defendants' motion to dismiss be, and the same is, hereby denied; and

2. That the defendants' request that this Court abstain be, and the same is, hereby granted in order to enable the parties to initiate proceedings in the courts of the State of Maryland within three months. Failure to seek relief in the state court within that time will be grounds for dismissal by this Court.

---

13. Monaghan v. Sch. Dist. No. 1, 211 Or. 360, 315 P.2d 797 (1957) (Legislator could not serve as public school teacher); State ex rel. Black v. Burch, 226 Ind. 445, 80 N.E. 2d 294 (1948) (legislators could not serve as secretary or director of state agency, or superintendent or inspector of commission); Saint v. Allen, 169 La. 1046, 126 So. 548 (1930) (legislator could not serve as attorney for state highway commission).

14. State ex rel. Barney v. Hawkins, 79 Mont. 506, 257 P. 411 (1927) (legislator could serve as auditor for Board of Railroad Commissioners).