Glenda FINCH et al.,
Plaintiffs-Intervenors,

v.

Caspar W. WEINBERGER, in his official capacity as Secretary of the United States Department of Health, Education and Welfare, and T. M. Parham, in his official capacity as acting Commissioner of the Georgia Department of Human Resources.

Civ. A. No. 75–592.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 22, 1975.

---

David A. Webster, Myron N. Kramer, Hugh F. O'Donnell, Atlanta Legal Aid Society Inc., Atlanta, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Stephen L. Cotter, Deputy Asst. Atty. Gen., for T. M. Parham.

John W. Stokes, U. S. Atty., Julian M. Longley, Jr., Asst. U. S. Atty., Carl H. Harper, Reg. Atty., Alvin Jaffe, Asst. Reg. Atty., Dept. of HEW, Atlanta, Ga., for Caspar W. Weinberger.

Before BELL, Circuit Judge, and O'KELLEY and FREEMAN, District Judges.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action brought by former recipients of benefits under the Georgia Aid to Families with Dependent Children (AFDC) Program, for declaratory and injunctive relief regarding termination of those benefits. Jurisdiction is alleged under 5 U.S.C. §§ 701–06; 28 U.S.C. §§ 1331, 1361; and 42 U.S.C. § 1983. Defendants are state and federal officials responsible for general supervision and implementation of the federal and state regulatory and statutory scheme in issue. Petitions for intervention have been filed by three additional plaintiffs, and the original named plaintiffs have also filed a motion for certification of this action as a class action.

The gravamen of the instant action concerns the provisions of the Georgia AFDC program which, when applied to persons in plaintiff's putative class, compel termination of AFDC payments on receipt of unemployment benefits. The named plaintiffs were formerly employed in the private sector of the economy; however they are no longer so employed. Both of the named plaintiffs earned in excess of $300.00 per month salary, and, while employed, received AFDC benefits of $73.00 per month in the case of plaintiff Finch, and $85.00 per month in the case of plaintiff Cash. Although the parties have not introduced appropriate evidence on this matter, plaintiffs were apparently deemed entitled to AFDC benefits because of application of certain deductions and credits provided by the Social Security Act. It appears that absent these deductions, plaintiffs' incomes would have exceeded the minimum standard of need set as a threshold for entitlement to AFDC benefits. The parties have stipulated that this threshold is $192.59 for plaintiff Finch and $160.92 for plaintiff Cash.

Since the amount of unemployment compensation received by plaintiffs also exceeds the relevant threshold amounts, their AFDC benefits have been terminated, because as interpreted and applied by defendants, the regulatory scheme does not authorize deductions for expenses incurred in seeking employment, see 42 U.S.C. § 602(a)(7),[1] and because unemployment compensation is not subject to an "income disregard" provision otherwise applicable as a credit against "earned income" in determining AFDC eligibility. See 42 U.S.C. § 602(a)(8).[2] If plaintiffs were allowed to deduct the expenses of seeking employment from the amount of unemployment compensation received, and if the income disregard provision were deemed applicable to receipt of unemployment compensation, plaintiffs would apparently qualify for receipt of AFDC benefits. Conversely, allowance of the work seeking expense deduction, in and of itself, would not render the named plaintiffs eligible for AFDC; however, one of the intervenors would apparently qualify for AFDC on the basis of allowing work-seeking expenses alone.

Plaintiffs' legal contentions are cogently summarized by defendant Parham as follows:

[Plaintiffs allege] that 42 U.S.C. § 602(a)(7) requires the State to deduct expenses allegedly incurred in *seeking* employment from income derived from unemployment compensation. Alternatively, if the Court does

---

1. The provisions of this statute provide in relevant part as follows: "[T]he State agency shall, in determining need, take into consideration any other income and resources . . . as well as any expenses reasonably attributable to the earning of any such income."

2. The provisions of this statute provide in relevant part as follows: "[T]he State agency—

(A) shall with respect to any month disregard— . . . (ii) in the case of earned income . . . the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month . . . ."

not find statutory authority for such deductions, Plaintiffs assert that denial of such *work-seeking* expenses is in violation of the Equal Protection Clauses of the Constitution of the United States. (Presumably Plaintiffs are referring to the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment.) Also, Plaintiffs claim the *earned* income disregard established by 42 U.S.C. § 602(a)(8) should be applied to income derived from unemployment compensation benefits paid for the lack of employment. Alternatively, if the Court finds no statutory authority for application of the earned income disregard to money derived from unemployment compensation, the Plaintiffs assert that disallowance of this work incentive bonus also violates the Equal Protection Clauses of the Constitution of the United States. (emphasis in original).

Plaintiffs seek a declaratory judgment regarding the above alleged violations, together with permanent injunctive relief "enjoining the Defendants from terminating AFDC benefits to Plaintiffs or any member of Plaintiffs' class without first applying the  .   .   .  income disregard and work-expense deduction allowances to income derived from unemployment compensation   .   .   ." [3]

In addition to the aforementioned motions for intervention and for certification of the action as a class action, defendant Weinberger has filed a motion to dismiss for lack of subject matter jurisdiction. Although normal procedure might require a ruling on the preliminary procedural motions before reaching the merits of the jurisdictional arguments, in light of the present posture of this case, some discussion of defendant Weinberger's motion is warranted. Moreover, although the parties have not argued that this action is not properly before a three-judge court, some attention should be devoted to this rather unsettled matter.

### SUBJECT MATTER JURISDICTION

The question of subject matter jurisdiction is intertwined with the question of the propriety of convening a three-judge court to consider this matter. This court clearly has jurisdiction over the state defendant under 28 U.S.C. § 1343 and 42 U.S.C. § 1983, and defendant Parham does not contend otherwise. Jurisdiction over defendant Weinberger has been extensively briefed by the parties, pursuant to the directions of the court at the hearing of this matter conducted on May 27, 1975. Defendant Weinberger contends that this court is without jurisdiction under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 because he was not acting under color of state law. Similarly, he contends that jurisdiction may not be predicated on 28 U.S.C. § 1343(4) because the Social Security Act is not an act of Congress providing for protection of civil rights. He further contends that there is no jurisdiction under 28 U.S.C. § 1331 because the Fifth Amendment does not contain an equal protection clause, because the federal claim is insubstantial, and because plaintiffs may not satisfy the $10,000.00 jurisdictional

**3.** Although the expense deduction provisions and income disregard provisions of the statutes in issue, *see* notes 1 & 2, *supra*, relate to "earned income" and the "earning" of income, as more fully discussed below, the federal statutory scheme does not contain a legislative definition of "earned income." The absence of such a definition has provided the focal point of the instant dispute. On the other hand, the State regulatory scheme, Part III, Section IV–145 of the State AFDC Plan, contains the following definition:

> Earned income is that income which is produced as a result of the performance of serv-

ices by an applicant/recipient; that is, income which the individual earns by his own efforts, including managerial responsibilities. This definition is further amplified in several subsequent paragraphs; however, unemployment compensation is neither expressly included nor excluded from this definition. The term "earned income" is similarly defined in federal regulations dealing with the § 602(a)(8) income disregard, 45 C.F.R. § 233.20(a)(6)(iii) [quoted *infra*]; however there is no explicit definition of the term specifically applicable to the § 602(a)(7) expense deduction provisions.

amount.[4] Finally defendant contends that jurisdiction may not be asserted under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, since that act is not a grant of federal jurisdiction, and that jurisdiction under 28 U.S.C. § 1361 is also improper, since "[c]hallenges to H.E. W.'s interpretation of the Social Security Act have not been found to be actions in the nature of mandamus . . . ."

■■ Of course, 28 U.S.C. § 1331 provides a recognized source for federal jurisdiction in Social Security Act cases, but federal question cases require a $10,000.00 jurisdictional amount. *See Weinberger v. Wiesenfeld, supra* at 641, 95 S.Ct. at 1230. *See also Winningham v. United States Department of Housing and Urban Development,* 512 F.2d 617, 620 n. 6 (5th Cir. 1975). Plaintiffs have introduced no evidence whatsoever regarding this matter, and otherwise appear to have abandoned § 1331 as a viable jurisdictional basis for suit. In fact, plaintiffs do not seek recovery of retroactive AFDC benefits, probably in recognition that recovery of such benefits would be barred by sovereign immunity concepts. *Adams v. Harden,* 493 F.2d 21 (5th Cir. 1974). On the other hand, plaintiffs strenuously argue that jurisdiction is proper in this case under concepts of pendent jurisdiction, under 28 U.S.C. § 1361, under 28 U.S.C. § 1337 and under 5 U.S.C. § 701 *et seq.* With respect to § 1361 jurisdiction and § 1337 jurisdiction, both parties have briefed and reached varying conclusions regarding the effect of the ruling in the *Winningham* case on this matter. Although plaintiffs' arguments are thorough and well-reasoned, this court has concluded that the *Winningham* ruling does not constitute a "narrow exception" to the applicability of mandamus type relief in actions involving constitutional claims. On the contrary, the *Winningham* ruling indicates that the federal courts in this jurisdiction should be reluctant to utilize § 1361 as a viable jurisdictional basis for compelling agency officials to recognize a "clear duty" to conclude that the federal statutes under which they are operating are unconstitutional. *Id.* at 620–21. Conversely, *Winningham* does tend to support plaintiffs' assertion that jurisdiction in this action may be predicated on § 1337; however, it is evident that the determination of whether a particular federal scheme should be classified as an act regulating commerce must be determined on a case by case basis. *Id.* at 622. This question presents an interesting academic argument; however, like plaintiffs' arguments founded on jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, this is a question which, in the circumstances of this case, may be more properly left to academicians.[5]

A few years ago, one court, in considering jurisdictional problems in an AFDC case stated the following: "[I]t is the understatement of the new year 1972

4. As discussed more fully below, plaintiffs have in effect abandoned their assertion of jurisdiction under § 1331; therefore discussion of defendant's arguments with respect to this section is not warranted. Nevertheless, it should be noted that defendant Weinberger's assertion that equal protection claims may not be asserted against federal officers is wholly without merit. *See Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 1228, n. 2, 43 L.Ed.2d 514 (1975).

5. Plaintiffs' arguments that jurisdiction over defendant Weinberger is appropriate under 5 U.S.C. § 701 are arguably supported by a recent opinion controlling in this jurisdiction. *See Ortego v. Weinberger,* 516 F.2d 1005 (5th Cir. 1975) (A.P.A. provides an independent jurisdictional basis for review of agency discretion in refusing to reopen prior applications for social security disability benefits). On the other hand, it is not clear whether this case, in ruling that agency discretion is reviewable in federal court under the A.P.A., should be construed as recognizing a rule that all agency conduct, including promulgation and enforcement of allegedly unconstitutional regulations, is reviewable under the same jurisdictional grant. Furthermore, the *Ortego* court specifically rejected jurisdiction under 28 U.S.C. § 1337, *id.* at 1010 (Social Security Act is not an "act regulating commerce") and under 28 U.S.C. § 1361, *id.* at 1011 (refusal to reconsider prior applications for benefits is a matter of discretion rather than a ministerial act).

to say that the matter is not free of doubt . . . ." *Francis v. Davidson,* 340 F.Supp. 351, 360 (D.Md.), *aff'd mem.,* 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972). Since that time, most lower federal courts that have considered the problem have concluded that if the constitutional claim cognizable under § 1343(3) is not insubstantial, the court would have jurisdiction to rule on the pendent statutory claims, despite the absence of the requisite jurisdictional amount over those claims; and, pursuant to the approach taken by the Supreme Court, *see Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), those courts have then proceeded to decide the pendent statutory issues first, thereby possibly avoiding constitutional adjudication. *E. g., Johnson v. Harder,* 383 F.Supp. 174, 178 (D.Conn.1974). *See also Francis v. Davidson, supra,* to the same extent that pendent jurisdiction exists with respect to the statutory claims, pendent "party" jurisdiction has also been deemed to constitute an appropriate jurisdictional basis for relief from responsible federal officials. *E. g., Glodgett v. Betit,* 368 F.Supp. 211, 215–16 (D.Vt. 1973), *aff'd on other grounds sub nom. Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975). *See also Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

■■ Under *Hagans v. Lavine, supra,* this court has jurisdiction pursuant to § 1343(3) over the state defendant (and possibly over defendant Weinberger) if plaintiffs' constitutional equal protection claim is not insubstantial. This question is a matter that might have been resolved by a single judge court, followed by resolution of the statutory questions raised by plaintiffs herein. *See id.* As a general rule, the policy of avoiding unnecessary constitutional adjudication would seem to compel adjudication of the statutory claims first, and adjudication of those claims by a single judge.

*Id.* at 543–48, 94 S.Ct. 1372. It appears that this is clearly the preferred practice; however, it is also clear that it may be equally permissible for a three-judge court to rule on the substantiality of the federal constitutional claim for jurisdictional purposes, pass on the statutory claims, and then, if necessary, turn to the constitutional issues. *See Philbrook v. Glodgett, supra,* 421 U.S. at 712, 95 S.Ct. at 1898 n. 8. In light of the fact that jurisdictional, statutory, and constitutional issues have been briefed by the parties, this court has concluded that it is appropriate in the interest of judicial economy to rule on each of these matters in one order.

■ As noted above, defendant Weinberger contends that the constitutional claim asserted by plaintiffs is insubstantial; however, his arguments in this regard relate to jurisdiction under § 1331, an issue no longer before the court. Although the substantiality of the constitutional question is also relevant in determining jurisdiction under § 1343(3), defendant Weinberger has focused his jurisdictional arguments with respect to this statute on the impropriety of applying the concept of pendent party jurisdiction to this case. This court agrees that this question presents a matter which has not been authoritatively resolved, and which has been characterized as "subtle and complex . . . with far-reaching implications." *Philbrook v. Glodgett, supra* at 720, 95 S.Ct. at 1901. Certainly, this court also agrees that the issue is sufficiently complex to preclude a ruling which could have no real impact on the interests of the parties to the action and which could have no real impact on the eventual outcome of this suit. *See id.* Defendant Weinberger, while no doubt interested in the outcome of this action, has not stated that he would disregard a ruling by this court on the merits of plaintiffs' claims, including a ruling as to the constitutionality of H.E.W. regulations and applicable provisions of the Social Security Act in issue

here.[6] Similarly, neither plaintiffs nor defendant Parham contend that this court should not adjudicate the constitutionality of the regulatory scheme in issue absent joinder of defendant Weinberger as a party defendant. As a result, by analogy to the approach taken by the Supreme Court in the *Glodgett* case, this court will refrain from an extended discussion of possible jurisdictional theories in this action, until such time that it appears that such a discussion would be more than an academic exercise or an advisory opinion.

### INTERVENTION AND CLASS CERTIFICATION

■ Before turning to the merits of the action, the question of the pending motions for intervention and for certification of the action as a class action must be resolved. Defendant Parham has expressed token opposition to the motions to intervene filed on behalf of Shirley Ann Rowland and Ernestine Jones, probably in recognition that their claims are quite similar to the claims of the named plaintiffs. On the other hand, defendant objects in greater detail to intervention on the part of Larceil Swinger, largely because intervenor Swinger apparently is the only party to this action who would potentially be entitled to AFDC benefits solely as a result of the work-seeking expense deduction sought by plaintiffs. Defendant Parham argues that the motion should be denied as untimely, and alternatively, that intervenor Swinger is not a proper party to this action because her AFDC entitlement has not been finally terminated. This latter defect has now been cured, in that plaintiffs have submitted a supplemental brief, including a copy of the final action by the Georgia Department of Human Resources, dated June 19, 1975, in which the hearing officer concluded that Ms. Swinger's AFDC entitlement

should be terminated since "unemployment compensation is unearned income" not subject to the work-seeking expense deductions claimed. Thus, the only objection warranting further consideration relates to the purported untimeliness of the instant motion.

The untimeliness of a motion for intervention is certainly a factor for consideration in judging the sufficiency of the motion, particularly when the application merely seeks permissive intervention under Rule 24(b)(2), Fed.R.Civ.P.; however, that factor, standing alone, is simply not a valid reason to deny intervention in this action. Defendants have not alleged that they would be subject to any real prejudice as a result of such intervention, other than the prejudice attendant upon defending against a claim that otherwise might be dismissed on standing or ripeness grounds. In this case, intervention will not delay the disposition of the merits of the action, and defendants have not contended that the intervenor's petition presents questions of law or fact which have not already been briefed and argued by the parties. As a result, despite the fact that the instant motion was not filed until after the hearing in this matter, this court has concluded that the two and one-half months delay between the filing of the complaint and the filing of the petition for intervention is not so inherently prejudicial as to warrant denial of the motion for intervention filed on behalf of Larceil Swinger. *See* C. Wright & A. Miller, *Federal Practice and Procedure* § 1916 (1972). Similarly, as no reasons appear for denying the motions for intervention filed on behalf of Shirley Ann Rowland and Ernestine Jones, each of the three motions for intervention heretofore filed in this action are hereby granted.

■ Plaintiffs' motion for certification of this action as a class action pursuant to Rule 23, Fed.R.Civ.P. is unopposed by

---

**6.** In fact, at oral argument, counsel for defendant Weinberger conceded that plaintiffs would be entitled to full relief, should they prevail on the merits, whether or not defendant Weinberger was a party to this action. Counsel noted, however, that it was not the "policy" of H.E.W. to participate in such proceedings.

defendants. *See* Local Court Rule 91.2; *Eley v. Morris,* 390 F.Supp. 913, 917 (N.D.Ga.1975). Unfortunately, this implicit concession does not necessarily dispose of the question, for other courts have reached varying determinations regarding the propriety of class action treatment in cases involving AFDC benefit claims. *See, e. g., Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (class action inappropriate under Title II of the Social Security Act), *rev'g,* 373 F.Supp. 961 (N.D.Cal. 1974); *Philbrook v. Glodgett, supra, aff'd on other grounds,* 368 F.Supp. 211, 213–15 (lower court ruled that class action was unmanageable, impracticable, and inequitable). *See also Weinberger v. Wiesenfeld, supra,* 420 U.S. at 641, 95 S.Ct. at 1230 n. 9 (1975) (noting that plaintiffs had not appealed from denial of class action treatment), *aff'g* 367 F.Supp. 981 (D.N.J.1973). *Compare. Francis v. Davidson,* 340 F.Supp. 351, 361–62 (D.Md.), *aff'd mem.* 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972) (class action appropriate in AFDC case). Despite the lack of uniform case authority, on review of the relevant factors and authorities, and considering defendants' lack of opposition to the motion, and in light of the fact that the instant action does not present difficult problems of procedure which might otherwise warrant further inquiry, *see Eley v. Morris, supra,* this court has concluded that this action is appropriate for class treatment under Rule 23(b)(2).

Accordingly, plaintiffs' motion for class certification is hereby granted. This action is ordered to proceed as a class action pursuant to Rule 23(b)(2). The class shall include all female former recipients of AFDC benefits in Georgia who have lost their entitlement to such benefits on account of termination of employment and subsequent receipt of unemployment compensation, or who have been subject to a reduction of their former level of AFDC benefits on account of termination of employment and subsequent receipt of unemployment compensation.

The remaining matters for consideration in this action concern the merits of plaintiffs' statutory and constitutional claims. As noted above, in ordinary circumstances this court would turn to the statutory issues before resolving the constitutional claims; however, in the circumstances of the instant case, and in light of defendant Weinberger's jurisdictional arguments, this court has concluded that economy of style requires that the constitutional discussion be concluded before the statutory arguments are disposed of. This is necessary because of the need for further comments with respect to the substantiality of the federal constitutional question presented in the action sub judice.

## THE CONSTITUTIONAL CLAIMS

As noted above, defendants do not vigorously contest the jurisdictional sufficiency of the constitutional claims, perhaps in recognition of the general precept that the potential insufficiency of the constitutional claims on the merits does not preclude a finding that the claims are sufficiently "substantial" for jurisdictional purposes to enable the district court to enter a ruling on the pendent statutory claims. *See Bethea v. Mason,* 384 F.Supp. 1274 (D.Md.1974).

The appropriate test for determining the substantiality question is arguably unsettled. Where there is a controlling case directly in point, the question is simple; but where it is not "immediately obvious" from the decided cases or "very plain" under the Equal Protection Clause that the questioned regulation is so "patently rational" as to require no meaningful consideration by the district court, the claim is sufficiently substantial to uphold federal court jurisdiction. *Hagans v. Lavine, supra,* 415 U.S. at 540–43, 94 S.Ct. 1372. *See Bethea v. Mason, supra. See also Driskell v. Edwards,* 518 F.2d 890 (5th Cir. 1975). This approach is consistent with the general rule that "the failure to state a proper cause of action calls for a judgment on the merits and not for a

dismissal for want of jurisdiction." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).

▮ Of course, the intersection between jurisdictional defects and the insufficiency of a constitutional claim on the merits may often present close questions, *Driskell v. Edwards, supra,* which, in light of the need for judicial economy, should probably be decided in favor of a ruling on the merits. On the other hand, a frivolous or patently insufficient constitutional claim on the merits, albeit a claim not yet authoritatively determined by prior case authority, provides a questionable basis for the assertion of pendent jurisdiction to invalidate a state statute or regulation on supremacy grounds, when there is no other arguable basis to justify federal court intervention. In addition to overburdening already crowded federal court dockets, such an approach would seem to infringe on recognized principles of comity and federalism which have sometimes warranted a federal court's staying its hand despite a clear grant of jurisdiction to resolve the matter.

The question of reduction of AFDC benefits on account of receipt of unemployment compensation is not a new one; however, the cases that have previously considered this question have invariably related to statutory and regulatory provisions affecting an unemployed *father's* entitlement to benefits. *E. g., Francis v. Davidson, supra; id.,* 379 F.Supp. 78 (D.Md.1974), *cert. denied sub nom. Mason v. Francis,* 419 U.S. 1042, 95 S.Ct. 614, 42 L.Ed.2d 636 (1974); *Glodgett v. Betit, supra.* As noted in the *Glodgett* case, there is a specific statutory enactment, 42 U.S.C. § 607(b)(2)(C)(ii), which requires the termination of AFDC benefits upon a father's receipt of unemployment compensation; however, there is no equivalent statutory provision which requires the termination of AFDC benefits upon the receipt of unemployment compensation by the mother. *Id.* at 213 n. 4. Thus, plaintiff mothers in the instant case, unlike fathers, lose their AFDC grants because the amount of un-

employment compensation received, absent deductions applicable to the receipt of earned income, exceeds the threshold limitation for eligibility for AFDC benefits.

In support of their constitutional arguments, plaintiffs rely on cases such as *Weinberger v. Wiesenfeld, supra; U.S. D.A. v. Moreno,* 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), and *Richardson v. Belcher,* 404 U.S. 78, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). Plaintiffs contend that defendants' failure to treat unemployment compensation income as subject to work-seeking expenses deductions under 42 U.S.C. § 602(a)(7) and failure to apply the income disregard provisions of 42 U.S.C. § 602(a)(8) to the receipt of unemployment compensation is irrational and arbitrary and clearly does not promote the intended purpose of the act. The parties to this suit all agree that the purpose of the work expense deduction and income disregard provisions in issue is to provide an incentive to welfare recipients to seek employment. *E. g., X v. McCorkle,* 333 F.Supp. 1109 (D.N.J.), *aff'd* 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971) (Per curiam). Plaintiffs do not contend that this is not a legitimate purpose, but argue instead that the state scheme in issue bears no rational relationship to achieving that purpose. In expressing their arguments, plaintiffs apparently do not contend that the state's failure to provide a credit for work-seeking expenses, and the state's failure to apply the income, disregard of unemployment compensation is *per se* irrational. On the contrary, they contend that other protections built into the system provide an adequate and less obtrusive means to achieve the acknowledged goal of providing a work incentive. In so arguing plaintiffs note that no recipient of unemployment compensation *and* AFDC benefits would be making in excess of their prior income; that seeking work is a prerequisite to receipt of unemployment compensation in the first instance, Ga.Code § 54–609(c); and that plaintiffs would lose their entitlement to the income disregard if they refuse with-

out good cause to accept employment, 42 U.S.C. § 602(a)(8)(C). In essence then, plaintiffs contend that refusing to allow work seeking expense deductions and failure to apply the income disregard provision to the receipt of unemployment compensation is unnecessary as an incentive to encourage employment, and hence irrational. Plaintiffs also note that terminating AFDC benefits because of receipt of unemployment compensation might possibly permanently disqualify them from future receipt of AFDC benefits, presumably, even if they are rehired at their former salary rates. Plaintiffs cite § 602(a)(8)(D) in support of this proposition, but they do not clearly explain, or set forth facts, showing the applicability of that section to their case. Furthermore, plaintiffs do not specifically attack this section, perhaps in recognition that such an attack would be premature, in light of the fact that plaintiffs have not yet been deprived of AFDC benefits by reason of § 602(a)(8)(D).

In opposition, relying on *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), defendant Parham argues that the state scheme is constitutional, because promotion of gainful employment is "a legitimate governmental interest constitutionally justifying the distinction made between those who have jobs and are afforded the work expense deduction and those who do not work." *See id.* at 486, 90 S.Ct. 1153. Defendant summarizes his arguments as follows:

> [G]iving precisely the same bonus to those who do work to those who do not would be a disincentive to find employment until all the unemployment compensation benefits forthcoming have been exhausted. This situation would not encourage gainful employment but would foster planned idleness at the substantial and unnecessary expense of the taxpayers. The refusal of the State to reward inactivity in the same manner as productivity is based on legitimate governmental interests in encouraging gainful em-

ployment and is therefore constitutionally justified.

As a result, the state contends that it is entitled to judgment in its behalf on the merits of the constitutional claim.

Defendant Weinberger's arguments with respect to the constitutional issue are similar. Relying on *Dandridge v. Williams, supra* and *Richardson v. Belcher, supra,* defendant notes that the appropriate test applicable in this situation is the rational basis test, noting that under this test, Congress may, pursuant to its legislative judgment, distinguish between the employed and unemployed by seeking different solutions for the different groups. *See Macias v. Finch,* 324 F.Supp. 1252, 1260–61 (N.D.Cal.) *aff'd mem. sub nom. Macias v. Richardson,* 400 U.S. 913, 91 S.Ct. 180, 27 L.Ed.2d 153 (1970). As a result, defendant contends that Congress may favor one class of needy persons over another by extending a special incentive, arguing that the fact that Congress "did not choose to extend such an incentive to every class of persons that conceivably might benefit from it does not constitute an invidious discrimination, but a simple allocation of finite resources."

■■■■ This court agrees with defendants' arguments, for plaintiffs in effect seek to have this court recognize a novel theory of constitutional adjudication, which is not a viable theory in the present circumstances. As noted above, the essence of plaintiffs' constitutional argument is that the scheme adopted by Congress, in refusing to allow work-seeking expense deductions and in failing to apply the income disregard provision to the receipt of unemployment compensation, is unnecessary as an incentive to encourage employment, and hence irrational. In effect then, plaintiffs rely on the fact that the Government could have achieved its goal by less obtrusive, alternative means; however, this question is simply not a proper inquiry in judging the rationality of the legislative scheme in issue under the appropriate test applicable here. *See Tyler v. Vickery,* 517

F.2d 1089 (5th Cir. 1975). Plaintiffs do not dispute the fact that the rational basis test applies in this case; and, under that test, the question is "not whether the state has superior means available to accomplish its objectives, but whether the means it has chosen is a reasonable one." *Id.* at 1102. Moreover, in judging the rationality and reasonableness of the scheme in issue, the following language provides essential guidance:

> [T]he intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration [citation omitted]. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.

*Dandridge v. Williams, supra,* 397 U.S. at 487, 90 S.Ct. at 1163.

Plaintiffs' constitutional arguments rest on another, perhaps more critical, misconception regarding constitutional adjudication, to the extent that their arguments are founded on the contention that there is "no valid or rational reason for the different treatment afforded to unemployment compensation and income from periodic wages." This contention presupposes that unemployed persons and wage earners are in effect similarly situated, and hence should be treated alike. This supposition rests on the basic tenet of constitutional adjudication that

> although an individual's right to equal protection of the laws "does not deny . . . the power to treat different classes of persons in different ways [;] . . . [it denies] the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of differ-

ence having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'" [citations omitted].

*Johnson v. Robison,* 415 U.S. 361, 94 S.Ct. 1160, 1169, 39 L.Ed.2d 389 (1974). Plaintiffs have not explicitly considered this problem, but it is difficult to understand how unemployed persons should be deemed similarly situated with employed persons. Furthermore, even if plaintiffs, as former beneficiaries of AFDC, may arguably be considered as part of a class of potential beneficiaries of AFDC, and hence within a class which may include wage earner AFDC recipients, this similarity would not necessarily fulfill plaintiffs' burden:

> [A] common characteristic shared by beneficiaries and nonbeneficiaries alike, is not sufficient to invalidate a statute when other characteristics peculiar to only one group rationally explain the statute's different treatment of the two groups.

*Id.* at 378, 94 S.Ct. at 1171. Thus this court agrees with defendants that the legislative scheme in issue here represents a viable and reasonable exercise of legislative choice, and is not so irrational or arbitrary as to create an invidious discrimination subject to equal protection attack. *See also Weinberger v. Salfi, supra,* 422 U.S. at 767–775, 95 S.Ct. at 2468–71.

In sum, the legislative scheme under consideration, if not so patently rational as to render the plaintiffs' equal protection claim insubstantial, is at least sufficiently related to a legitimate legislative purpose, encouragement of employment, that plaintiffs' constitutional claims should be rejected on the merits. It seems clearly reasonable, assuming the statutory provisions in question were designed to provide an incentive, or bonus, for obtaining and retaining employment, to refuse to extend that bonus when a welfare recipient is not gainfully employed. It seems reasonable to reduce an employed welfare recipient's benefits when that recipient loses his or her job

and receives unemployment benefits as compensation for loss of the job. If a welfare recipient received the same equivalent total income while unemployed, as while employed, there would seem to be little incentive to return to work, notwithstanding the built-in statutory protections otherwise designed to effectively compel a welfare recipient to seek employment. For example, in the instant case, assuming plaintiff Finch prevailed on the merits of her claims; and then assuming she was rehired in her former position, she would be earning $14.00 per week more by working a full week than by remaining on the unemployment rolls; but she would not substantially increase her welfare benefits.[7] Notwithstanding plaintiff's adherence to the "work-ethic" concept, and even assuming $14.00 per week additional income might provide some incentive, it is equally possible for the state to rationally conclude that her potential entitlement to restoration of AFDC benefits by reason of application of § 602(a)(7) and § 602(a)(8) might provide an even greater incentive to return to work.

## THE STATUTORY CLAIMS

Plaintiffs also contend that the state scheme in issue here violates federal law, arguing that the plain language of the federal statutes and regulations, taken in conjunction with the intent of federal law to encourage gainful employment, requires deduction of expenses of looking for work in computing their entitlement to AFDC benefits. The relevant statutory provision provides as follows: "[T]he State agency shall, in determining need, take into consideration any other income and resources . . . as well as any expenses reasonably attributable to the earning of any such income." 42 U.S.C. § 602(a)(7). There is apparently no dispute that unemployment compensation may be considered as "other income and resources" in determining a potential AFDC recipient's need;[8] however plaintiffs, throughout their briefs, and in the specific section of their briefs relating to the expense deduction provisions, argue that unemployment compensation should also be considered the equivalent of *earned* income for the purpose of allowing expense deductions, and that such deductions should be allowed for the expenses of seeking work. Although there is no specific exclusion for unemployment compensation itself, plaintiffs note that federal regulations require the state, "in determining the availability of income and resources . . . [to exclude] expenses reasonably attributable to the earning of income. . . ." 45 C.F.R. § 233.-20(a)(3)(iv). Plaintiffs also note that "in

---

7. The parties have stipulated that plaintiff Finch earned $80.00 per week while employed and is now receiving $66.00 per week in unemployment compensation. Although the parties have also stipulated the amount of her former entitlement to AFDC; her standard of need; the amount which her total unemployment benefits exceed her standard of need; and the amount which she would be entitled to claim as credits against her unemployment compensation receipts if § 602(a)(7) and § 602(a)(8) were applicable to unemployment compensation, the parties have not stipulated the precise amount of AFDC benefits plaintiff Finch would be entitled to in the event she prevailed on the merits. In fact, the parties have not discussed the State's method of calculating AFDC entitlement at all. In their brief, plaintiffs state that should they prevail on the merits, no class member would receive "in excess" of their prior income, noting that *"[i]n most cases,* the recipient would still be making far

less than while employed. . . ." Absent any evidence to support this conclusion, and absent any legal argument with respect to this matter, this court must reject plaintiffs' implicit assumption that the differential between their former entitlement to AFDC and their potential entitlement to AFDC while unemployed would still be sufficiently great to provide a compelling incentive to return to work.

8. Plaintiffs do not contend that unemployment compensation may not be considered in computing their threshold entitlement to AFDC. *But cf. Taylor v. Lavine,* 497 F.2d 1208, 1215 (2d Cir. 1974) (only "real" sources of income may be considered in determining need). Defendants have not discussed this matter in any detail, other than to state that unemployment compensation is considered as "other income and resources."

establishing financial eligibility and the amount of the assistance payment . . only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered. . . ." 45 C.F.R. § 233.20(a)(3)(ii). As a result of their interpretation of these provisions, plaintiffs argue that "reasonable job-seeking expenses are 'attributable to the earning of income' just as much as expenses which are incurred after new employment is obtained," concluding that pursuant to 42 U.S.C. § 602(a)(7), "income and resources" should only include "disposable or spendable income of the family unit," after deducting the amount spent on seeking employment.

Plaintiffs' arguments with respect to the "income disregard" provisions are similar; although they face an additional burden of overcoming somewhat clearer statutory provisions which tend to refute their position. The relevant statutory provision provides as follows: "[T]he State agency—(A) shall with respect to any month disregard—. . . (ii) in the case of earned income . . . the first $30 of the total of *such earned income* for such month plus one-third of the remainder of such income for such month . . . ." 42 U.S.C. § 602(a)(8) (emphasis added). The statutory scheme does not contain a definition of "earned income," but a definition is provided by federal regulations:

[F]or purposes of disregarding earned income the agency policies will include: (i) A definition of "earned income" in accordance with the provisions of . . . this subparagraph.
. . .
(iii) The term "earned income" encompasses income in cash or in kind earned by a needy individual through the receipt of wages, salary, commissions, or profit from activities in which he is engaged as a self-employed individual or as an employee. . . .

. . . . . .

(vi) The definition *shall exclude* the following from "earned income": . . . *[B]enefits* (not in the nature of wages, salary or profit) *accruing as compensation . . . for lack of employment.*
45 C.F.R. § 233.20(a)(6) (emphasis added). *See also* note 3, *supra.* The relevant state scheme excludes "unemployment compensation" from the definition of "earned income" subject to the § 602(a)(8) income disregard provision. Although plaintiffs make an argument to the effect that the above HEW regulation does not specifically exclude unemployment compensation benefits, the essence of their argument is founded on their contention that "the exclusion of state unemployment compensation benefits from 'earned income' in both federal and state regulations is inconsistent with the above-quoted portion of the Social Security Act. [42 U.S.C. § 602(a)(8)]." *See Dixon v. United States,* 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965) (regulations which fail to comport with statutory directives are ineffective). In making this argument, plaintiffs contend that unemployment compensation should be deemed the equivalent of wages, since such compensation is "a form of wage substitute which [is] dependent upon the worker's work performance." Similarly, plaintiffs also contend that unemployment compensation is a "deferred payment for services rendered [which] is just as much 'earned income' as wages paid on a current basis."

In opposition to the statutory arguments, defendant Parham notes that the determinations of the agency (HEW) charged with administration of the AFDC program "are entitled to great weight and should not ordinarily be overturned by the courts except for sound reasons. *See, e. g. Lewis v. Martin,* 397 U.S. 552, 559 [90 S.Ct. 1282, 25 L.Ed.2d 561] (1970); *Rosado v. Wyman,* 397 U.S. 297, 315 [397, 90 S.Ct. 1207, 25 L.Ed.2d 442] (1969)." With respect to the expense deduction argument, defendant contends that the plain language of the statute and the regulations promul-

gated pursuant thereto limit deduction of expenses to work-related expenses "incurred in earning the income." As a result, defendant contends that plaintiffs have addressed their complaints to the wrong forum, noting that "[w]hether Congress should have allowed an expense deduction for expenses incurred in seeking employment is a matter of legislative concern." Defendant makes a similar argument with respect to the income disregard aspects of this case, classifying the income disregard as a sort of "bonus" enacted as part of the Work Incentive Program to encourage gainful employment. Defendant argues that "[i]f the same bonuses were given to welfare families without regard to whether they were gainfully employed, this would be a disincentive to find, obtain and hold employment." Furthermore, defendant implicitly argues that receipt of compensation by reason of unemployment is not equivalent to receipt of compensation from employment, since "unemployment", by definition, refers to "lack of employment." *Black's Law Dictionary* 1968 (4th ed. 1968).

Defendant Weinberger's arguments parallel those of defendant Parham; however, defendant Weinberger also discusses the legislative history of the relevant statutory concepts in some detail. As noted above, there is no dispute that the overall purpose of the legislative scheme in issue is to provide an incentive for welfare recipients to seek employment. *X v. McCorkle, supra.* On the other hand, there is considerable dispute concerning the definition of "earned income" properly subject to the expense deduction of § 602(a)(7) and the § 602(a)(8) income disregard. *See* note 3, *supra.* After discussing similar enactments in other regulatory schemes,[9] and after discussing the rather limited legislative history of § 602(a)(8) and § 602(a)(7), the defendant Weinberger concludes as follows:

[T]he history of the term "earned income" is . . . uniformative [sic]. Patient scrutiny, however, reveals a total absence of any indication that Congress meant to depart from the commonly accepted meaning which has been embodied in its clear and consistent administrative definition since its earliest usage in the Act.

As a result, defendant Weinberger argues that unemployment compensation, albeit income for the purposes of computing plaintiffs' standard of need, is simply not *earned* income for the purposes of the work expense deductions and the income disregard provisions.

█ Plaintiffs' arguments with respect to the statutory construction issue are similar to the arguments with respect to the constitutional issue; and, in either context, they rest on a faulty supposition: that unemployment compensation should be deemed to be substantially equivalent to receipt of wages from gainful employment. This court has carefully reviewed the arguments of the parties with respect to the appropriate characterization of unemployment benefits under Georgia law, and concluded that these arguments are not strictly relevant to the issue sub judice. The interpretation of federal statutes is a matter of federal rather than state law; moreover, such statutes must be construed in an effort to effectuate the legislative intent and purposes of the United States Congress and not the intent of the legislature of Georgia. *Cf. Philbrook v. Glodgett, supra,* 421 U.S. at 713–719, 95 S.Ct. at 1898–1901. Similarly, as noted by defendants, in cases of apparent ambiguity, deference should be accorded to the responsible agency's interpretation of its regulations and its consistent administrative practice with respect to applicable statutory directives. *E. g., Lewis v. Martin, supra; Rosado v. Wyman, supra.*

█ It is clear that the relevant statutory provisions speak in terms of ex-

9. Defendant also relies on the definitions of earned income included in other statutory schemes, such as the Internal Revenue Code, 26 U.S.C. §§ 911(b), 1348(b), noting that un-

employment compensation is not considered as income for tax purposes. Rev.Rul. 70–280, 1970–1 Cum.Bull 13.

penses incurred in the "earning" of income, and "earned income," and not in terms of unemployment compensation. Certainly, there is a technical anomaly in treating unemployment compensation as "other income and resources" for the purpose of computing the appropriate standard of need under § 602(a)(7), and yet not treating unemployment compensation as "earned income" for the purposes of § 602(a)(8). This apparent inconsistency evaporates, however, when the plain language of the statute is examined. Section 602(a)(7) only permits the deduction of expenses incurred in *earning* income, and the income disregard provision of § 602(a)(8) only applies to *earned* income. It is well settled that "words used in a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary . . . ." *Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1974) (an unborn child is not a dependent child for the purposes of AFDC benefits). The ordinary meaning of earned income clearly contemplates income in the form of wages received as a result of a person's employment in the active labor force rather than compensation received as a result of a person's lack of employment. Plaintiffs' arguments to the contrary are without merit.

In sum, this court has concluded that the work incentive deductions and credits provided by § 602(a)(7) and § 602(a)(8) were not designed to be applied to persons not gainfully employed. These credits apply solely to *earned* income in the form of wages and not to compensation received as a result of a former AFDC recipient's lack of employment. As a result, this court has concluded that defendants have violated neither statutory nor constitutional mandates in terminating plaintiffs' AFDC benefits without first applying the aforementioned credits to their receipt of unemployment compensation in computing plaintiffs' threshold entitlement to AFDC. Accordingly, the Clerk is hereby Ordered to enter judgment in favor of defendants and against plaintiffs in this action.

It is so ordered.