OPINION OF THE COURT
Vincent E. Doyle, J.
The petitioner has commenced this CPLR article 78 proceeding seeking a review of the determination of the respondents, a declaratory judgment, a permanent injunction and an order for retroactive benefits, costs and disbursements.
In 1970 the petitioner began receiving a public assistance grant of Aid to Families with Dependent Children (hereinafter AFDC) from the Erie County Department of Social Services (hereinafter the Department) to meet the needs of herself and her son. She became employed in 1977 as an assembly line worker at Extracorporeal Medical Specialties in Buffalo, New York. The Department, in its determination of the petitioner’s continued eligibility for *1042 public assistance, applied the earned income disregard provision of section 602 (subd [a], par [8], cl [A], subcl [ii]) of title 42 of the United States Code to the income the petitioner received from her employer. Under this earned income disregard provision, the first $30 and one third of the remainder of an employed AFDC recipient’s earned income is disregarded in determining need for public assistance. The petitioner continued to receive an AFDC grant of approximately $13.50 each month in addition to Medicaid.
During 1979, as a benefit to its employees, Extracorporeal Corporation provided an insurance policy with INA Life Insurance Company of New York which paid Extra-corporeal Corporation employees one half of their regular income upon their becoming ill for an extended period of time. On August 27, 1979, the petitioner temporarily stopped working and one week later she underwent major surgery. While she was ill, she received a biweekly check of $139.06 (one half of her normal wages) from the INA Life Insurance Company. This income was provided by the petitioner’s employer through the insurance policy maintained for its employees as an incident of employment. The fact that the employer chose this manner of providing sick pay is of no moment.
Upon notification that the petitioner had stopped working, and instead was receiving sick benefits in the amount of $139.06 biweekly, the Department decided to terminate her public assistance as of October 12,1979. The petitioner requested a fair hearing for the purpose of appealing the Department’s determination to discontinue her grant. In the meantime, the petitioner returned to work on November 9, 1979. The fair hearing was held on November 29, 1979 at which time the petitioner contended that the sick benefits she temporarily received while ill were within the earned income disregard provisions of Federal law.
The respondent, Barbara Blum, as Commissioner of the New York State Department of Social Services, issued a decision after the fair hearing affirming the determination of the Department to exclude the petitioner’s sick benefits from the earned income disregard provisions of Federal *1043 law, thereby making the petitioner ineligible for public assistance.
The AFDC program, established under title IV-A of the Social Security Act (US Code, tit 42, §§ 601-610), provides aid in the form of cash assistance and social services to needy dependent children and the adults who care for them. A principal purpose of the program is to assist parents and relatives of needy dependent children to “attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection” (US Code, tit 42, § 601).
Congress enacted the earned income disregard provision of the Social Security Act to further the goal of restoring families to employment and self-reliance. Most income is offset against the standard of need on a dollar-for-dollar basis, but Federal law specially treats a certain portion of earned income. Under section 602 (subd [a], pars [7], [8]) of title 42 of the United States Code, a State AFDC plan* must:
“(7) except as may be otherwise provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources pf any child or relative claiming aid to families with dependent children *** (8) provide that, in making the determination under clause (7), the State agency —
“(A) shall with respect to any month disregard — * * *
“(ii) in the case of earned income of a dependent child not included under clause (i), a relative receiving such aid, and any other individual *** whose needs are taken into account in making such determination, the first $30 of the *1044 total of such earned income for such month plus one-third of the remainder of such income for such month”.
The purpose of this “30 and one third” earned income disregard provision obviously is to encourage adults in AFDC families to take gainful employment (Johnson v Likins, 568 F2d 79, 82). The legislative history of this provision supports this view. The report of the Senate Finance Committee written prior to the enactment of the earned income provision said:
“The committee is recommending the enactment of a series of amendments to carry out its intent of reducing the AFDC rolls by restoring more families to employment and self-reliance.
“The first series of amendments is designed to encourage and make possible the employment of adults in AFDC families. Three provisions are aimed at this purpose: ***
“(3) A requirement that all States exempt part of the AFDC recipient’s earnings to provide incentives for work in regular employment. ***
“A key element in any program for work and training for assistance recipients is an incentive for people to take employment. If all the earnings of a needy person are deducted from his assistance payment, he has no gain for his effort. Currently, there is no provision in the Social Security Act under which States may permit an employed parent or other relative under the AFDC program to retain some of his earnings. There is no doubt, in the opinion of the committee, that the number of recipients who seek and obtain employment will be greatly increased if, in conjunction with the work incentive program, there may be added to title IV some specific earnings incentives for adults to work.” (1967 US Code Cong & Admin News, vol 2, Report of the Senate Finance Committee, S Rep No. 744, pp 2982, 2994.)
Federal regulations define “earned income” with the work inducement purpose in mind, i.e.: “The term ‘earned income’ encompasses income in cash or in kind earned by a needy individual through the receipt of wages,, salary, commissions, or profit from activities in which he is engaged as a self-employed individual or as an employee.” (45 CFR 233.20 [a] [6] [in].)
*1045 New York State regulations also define “earned income” as follows: “Earned income shall mean income in cash or in kind earned by an individual through the receipt of wages, salary, commissions, or profit from activities in which he is engaged as a self-employed individual or as an employee. Such earned income may be derived from his own employment such as a business enterprise or farming; or derived from wages or salaries received as an employee.” (18 NYCRR 352.17 [a].)
Further, the Federal regulations specifically exclude the following from consideration as earned income subject to the 30 and one-third exemption: “Returns from capital investment with respect to which the individual is not himself actively engaged, as in a business (for example, under most circumstances, dividends and interest would be excluded from ‘earned income’); benefits (not in the nature of wages, salary or profit) accruing as compensation, or reward for service, or as compensation for lack of employment (for example, pensions and benefits, such as United Mine Workers’ benefits or veterans’ benefits).” (45 CFR 233.20 [a] [6] [vi]; emphasis supplied.)
The issue, therefore, to be decided in this case is whether sick benefits received by a working AFDC recipient from her employer are within the earned income exemptions of the Federal statute and regulations and the New York State regulations.
Clearly, 45 CFR 233.20 (a) (6) (vi) excludes from the 30 and one-third exemption treatment those types of income paid to persons while they are not actually employed, such as retirement benefits, rewards following long lengths of service with a particular employer, dividends and interest. What is less clear about the same regulation is whether sick pay: (1) is a benefit accruing as a form of compensation but not in the nature of wages, salary or profit, and, thus, excludable from the 30 and one-third earned income exemption treatment; or (2) is a benefit in the nature of wages, salary or profit, and therefore includable within the 30 and one-third earned income disregard provisions.
Without actually addressing the exact wording of the Federal regulation, the correspondent, Fred J. Buscaglia, Commissioner of the Erie County Department of Social *1046 Services, urges that the nature of sick benefits is sufficiently analogous to the nature of unemployment compensation benefits so as to permit equivalent treatment of both benefits. Unemployment compensation benefits have been held to fall outside the definition of the earned income disregard provision (Finch v Weinberger, 407 F Supp 34). The court in Finch (supra, at p 49) commented, “The ordinary meaning of earned income clearly contemplates income in the form of wages received as a result of a person’s employment in the active labor force rather than compensation received as a result of a person’s lack of employment.”
This court agrees with the petitioner, however, that sick benefits surely are distinguishable from unemployment compensation benefits. Whereas unemployment compensation benefits are received as the result of being unemployed, sick benefits are received only as the result of being employed in the labor force, but temporarily unable to report for work because of illness.
Respondent Buscaglia further argues that if as the result of receiving sick benefits, a welfare recipient could achieve the same total income as he or she could achieve by actually working, the recipient’s incentive to return to work would be removed.
This court, however, believes that the respondents’ policy of characterizing sick benefits as income not subject to the earned income exemption provisions irrationally penalizes a recipient for becoming ill and may operate to compel a person to return to work prior to his or her full recovery. Moreover, few recipients would be able to continue receiving sick benefits after their recovery since most employers and insurance carriers require medical proof of illness and limit the number of weeks for receipt of benefits.
A definition of “earned income” limited to mean “compensation for time actually spent laboring” would frustrate the primary purpose of the earned income disregard statute and the connected regulations. Much of the reward for obtaining and retaining a job would be taken away by deducting sick pay and other benefits, such as vacation pay *1047 or holiday pay, from a working AFDC recipient’s grant. As the court in Jackson v Quern (US Dist Ct, ND 111, Nov. 7, 1979) pointed out, “AFDC *** characterizes income as it does in order not to remove incentives to work.” Sick pay, therefore, must be viewed as a benefit in the nature of wages, salary or profit within the meaning of 45 CFR 233.20 (a) (6) (iii) and 45 CFR 233.20 (a) (6) (vi) and subject to the 30 and one-third exemption. Only this interpretation of these regulations will further the AFDC program’s goal of maximizing self-support and personal independence.
Thus, the interpretation the respondents place on the Federal disregard statute and the corresponding Federal and State regulations is erroneous. The respondents must apply the 30 and one-third exemption to the sick benefits received by the petitioner in their determination of her AFDC grant. The fair hearing decision rendered against the petitioner is reversed and annulled and the petitioner is entitled to recoup her lost benefits.
The petitioner also requests a judgment declaring the respondents’ policy of excluding sick benefits received by a working AFDC recipient from the earned income disregard provisions of Federal law, as violative of those provisions. Declaratory relief will serve the practical end of clarifying an apparently uncertain jurai relation involving the respondents’ present and prospective obligations (see James v Alderton Dock Yards, 256 NY 298,305). The respondents’ policy deprives the petitioner of a portion of a grant she is entitled to receive under Federal law. All the necessary parties before this court have had an opportunity to be heard. The matter before this court essentially involves a question of law which may recur with respect to AFDC recipients. Accordingly, the petitioner’s prayer for declaratory relief is granted (see Matter of Oolie v Blum, Supreme Ct, Erie County, Oct. 14, 1980, Denman, J.; Matter of Nielsen v Blum, Supreme Ct, Erie County, Jan. 16, 1980, Denman, J.).
This court further enjoins the respondents from excluding sick benefits received by an employed AFDC recipient from the earned income disregard provisions of Federal law.
*1048 In conclusion, the petitioner is hereby granted judgment (1) reversing and annulling the adverse fair hearing decision, (2) declaring the respondents’ policy of characterizing sick benefits received by a working AFDC recipient as income not subject to the earned income exemption provisions of Federal law as violative of those provisions, (3) enjoining the respondents from excluding sick benefits received by an employed AFDC recipient from the earned income disregard provisions of Federal law, (4) ordering the respondents to reimburse retroactively the petitioner for benefits unlawfully withheld as a result of its refusal to consider the petitioner’s sick benefits as earned income subject to the earned income disregard provisions of Federal law, and (5) awarding the petitioner costs and disbursements incurred in bringing this proceeding.

 In a nutshell: “The AFDC program is based on a scheme of cooperative federalism * * * It is financed largely by the Federal Government, on a matching fund basis, and is administered by the States. States are not required to participate in the program,, but those which desire to take advantage of the substantial federal funds available for distribution to needy children are required to submit an AFDC plan for the approval of the Secretary of Health, Education, and Welfare (HEW) *** The plan must conform with several requirements of the Social Security Act and with rules and regulations promulgated by HEW.” (King v Smith, 392 US 309, 316-317; emphasis added.)